NATIONAL BANK OF COMMERCE TRUST AND SAVINGS
ASSOCIATION, LINCOLN, NEBRASKA, APPELLANT, V.
JOEL M. KATLEMAN ET AL., APPELLEES.

266 N. W. 2d 736

Filed June 14, 1978.  No. 41513.

Knudsen, Berkheimer, Endacott & Beam, for appellant.

McGrath, North, O'Malley, Kratz, Dwyer, O'Leary & Martin, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, MCCOWN, CLINTON, BRODKEY, and WHITE, JJ.

WHITE, C. THOMAS, J.

The plaintiff-creditor brought this action to enforce payment by the defendants-guarantors of an $85,000 guaranty agreement. The jury returned a verdict for the defendants and the plaintiff appeals. We affirm.

The $85,000 guaranty agreement signed by the defendants Joel M. and Virginia Katleman was one of six such agreements guaranteeing a loan of $500,000 extended by the plaintiff-bank to Boetel & Co. and Boetel Properties, Inc. (hereinafter referred to as Boetel). The other five guaranty agreements were signed by persons not parties to this lawsuit. Boetel is involved in real estate development and the sale of limited-partnership interests in completed apartment projects. Boetel wished to issue limited-partnership interests in larger denominations. Boetel needed to secure additional capital in order to comply with regulations of the Securities and Exchange Commission.

A loan was arranged from the plaintiff. Incidental thereto, an agreement with Dial Development, Inc. (hereinafter referred to as Dial), was contemplated. The agreement with Dial called for Dial to transfer to Boetel the title to three properties in Omaha, known as Autumn Heights, Lake Forest, and Winchester Heights; in return, Dial would receive 40 percent of the shares of Boetel stock. The Boetel-Dial plan was presented to the plaintiff during the loan negotiations and is reflected in the loan documents.

Jack Karnes, the president of Dial, secured guarantors of the loan. Karnes approached the defendant Joel M. Katleman in January of 1974. Katleman signed a commitment letter and guaranty agreement drafted by the plaintiff.

The commitment letter, dated January 25, 1974, recited a repayment plan contemplating certain percentages of the proceeds from sales of syndications and real property to Boetel and a guaranty of the loan by the guarantors. In addition, the letter contained the following provision: "To guarantee performance under the various pledges described herein, secure the agreed upon source of repayment and to provide control of certain assets of the borrowing companies second mortgages on respective properties shall be executed and filed as follows:

"1. A second mortgage on Georgetown, * * * to be filed on or before closing * * *.

"2. A second mortgage on Winchester * * * to be perfected and filed as soon as title is received but in no event later than 6 months of the date hereof * * *.

"3. A second mortgage on Autumn Heights * * * as soon as title is perfected within approximately 2 months. * * *

"4. Second Mortgage on Lake Forest III, to be perfected and filed * * * within approximately 2 months of the date hereof. * * *

"5. A second mortgage on Briarhurst I, * * * which mortgage should be filed of record on or before the date of closing * * *." This provision includes mortgages on two properties owned by Boetel, Georgetown and Briarhurst, in addition to those expected to be transferred from Dial.

The defendant Joel M. Katleman is an experienced real estate developer. Virginia Katleman, Joel M. Katleman's wife, is a party by virtue of her signature on the commitment letter. She signed only at the request of her husband and because of her trust in his judgment, and not because of any familiarity with the conditions of the agreement. Hereinafter, any reference to "the defendant" will be a reference to Joel M. Katleman.

The defendant testified that he signed the guaranty because he felt that second mortgages on the

properties listed would provide more than adequate security for the loan. The defendant's opinion was based on his experience that first mortgage lenders would loan 50 percent to 75 percent of the appraised value on such land projects as those listed in the letter. Along with the commitment letter, Karnes provided the defendant with appraisals of the subject properties. Using a figure of 25 percent equity, the defendant estimated the second position equity in the properties to be in excess of $1,000,000.

The loan agreement, dated January 29, 1974, between Boetel and the plaintiff referred to the mortgages, listed as "second mortgages" in the commitment letter, as "mortgages." The plaintiff says the designation of the mortgages as "second mortgages" in the commitment letter was meant to read "secondary mortgages." A secondary mortgage is a broader term than second mortgage in that a secondary mortgage may mean a lien which is second, third, fourth, or even fifth in priority. The plaintiff contends that the mortgages mentioned in the commitment letter and loan agreement were merely control mortgages and never meant to be collateral for the loan. The purpose of a control mortgage would be to ensure the plaintiff of notification of a sale of real estate by Boetel and enable plaintiff to claim its share of the proceeds provided for by the repayment plan. The defendant did not see the loan agreement until the time of trial and was never informed that the agreement's mortgage clause contained different language than that of the commitment letter.

The only mortgage the plaintiff obtained in compliance with the terms of the commitment letter was a second mortgage on the Briarhurst property. Plaintiff did not have a second mortgage on the Georgetown property at the time of closing the loan, but did subsequently acquire such a mortgage. The plaintiff has failed to obtain valid mortgages on the

remaining three properties due to the failure of Dial to consummate its agreement with Boetel and transfer title to the properties to Boetel. The defendant contended that this failure to secure the collateral mortgages as stated in the terms of the commitment letter excused his performance under the guaranty agreement. The jury agreed.

We will deal first with the plaintiff's assignment of error relating to which documents control the defendant's liability, since we feel this goes to the central issue of the case. This issue is whether the loan agreement is an essential part of the guaranty and whether a guarantor is bound by an agreement to which he is not a party and which he has not seen. The trial court instructed the jury that the contract between the plaintiff and the defendant consisted only of the loan commitment letter and the guaranty. The plaintiff contends that it was prejudicial error for the court to exclude the loan agreement in the instruction on what constituted the contract between the parties.

In support of its contention, the plaintiff cites the general rule that other writings which are referred to in a written contract may be incorporated by reference as a part of the contract and, therefore, may properly be considered in the construction of the contract. The plaintiff urges that the loan agreement was incorporated through certain statements by the defendant contained in the pleadings and/or by language contained in the guaranty agreement. In his answer, the defendant admitted that Boetel signed promissory notes promising to repay to plaintiff loans totaling $500,000 and that the loans were subject to a loan agreement. The defendant also stated in his answer that the plaintiff did not perform certain agreements set out in the loan agreement and the commitment letter and that the agreements operate to protect the defendant. The first statement merely admits what is undisputed - that

Boetel owes plaintiff $500,000 and such indebtedness is evidenced by a loan agreement. The reference to the loan agreement in the second statement does not constitute an admission by the defendant that he is bound by the loan agreement and does not operate to incorporate it into the contract.

The plaintiff also urges that the guaranty agreement signed by the defendant referring to the promissory notes, which refer to the loan agreement, incorporates the loan agreement into the contract. Like the above statements in defendant's answer, to which the plaintiff directed our attention, this contention concerning the guaranty agreement is too tenuous a ground to support even the suggestion of incorporation by reference.

The evidence fully supports the instruction that the contract at issue is composed of the commitment letter and the guaranty agreement. These are the only two documents signed by the defendant. The first time the defendant saw the loan agreement was at trial. The plaintiff argues that the exclusion of the loan agreement from the contract prejudices it because the loan agreement refers to the mortgages to be secured by the borrower to the bank as "mortgages" rather than "second mortgages." The plaintiff contends that the term "second mortgage" in the commitment letter was a mistake. The difference between a "second" mortgage and a "secondary" mortgage is highly significant. In addition, we note the defendant was never notified by the plaintiff that the terms of the commitment letter were different than the terms of the loan agreement.

The debtor is not a party to the guaranty, and the guarantor is not a party to the principal obligation. The undertaking of the former is independent of the promise of the latter and the responsibilities which are imposed by the contract of guaranty differ from those created by the contract to which the guaranty is collateral. See In re Estate of Williams, 148 Neb.

208, 26 N. W. 2d 847. Here, the commitment letter and the guaranty were signed contemporaneously by the defendant and he was aware only of the provisions of those documents. They, and they alone, comprise the defendant's agreement with the plaintiff.

A second error assigned by the plaintiff relates to the testimony of J. Neil Hammitt, an expert witness called by the defendant. Hammitt is currently a loan officer with a financial institution in St. Louis, Missouri, and formerly was associated with the Omaha office of Banko Mortgage Company of Minneapolis, Minnesota. He testified that he was familiar with commercial and mortgage lending and banking practices in general in the Omaha area in 1974. Hammitt testified regarding methods that might have been utilized by the plaintiff to make certain the mortgages referred to in the commitment letter were obtained. These two methods were, one, the use of a title binder to assure that the second mortgages were obtained or, two, the establishment of an escrow account to support the equity position of the collateral to be obtained. The plaintiff alleges that the admission of such testimony was error because it involved the interpretation of the contract between the parties, which is an improper subject for expert testimony.

The testimony of Hammitt recited standard banking practices and explained various terms, but did not interpret the contract at issue. Admissibility of expert testimony depends on whether specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. It is for the trial court to make the initial decision on whether the testimony will assist the trier of fact. The soundness of its determination depends upon the qualifications of the witness, the nature of the issue on which the opinion is sought, the foundation laid, and the particular facts of the case. See Rawlings v. Ander-

sen, 195 Neb. 686, 240 N. W. 2d 568. The trial court did not abuse its discretion in allowing the expert testimony. See § 27-702, R. R. S. 1943.

Lyle E. Davis, a loan officer of and witness for plaintiff-bank, testified to standard banking practices in relation to certain loan transactions. Davis justified the plaintiff's handling of the loan in light of banking practices for a commercial loan as opposed to a real estate mortgage loan. The court characterized Davis as an expert and admitted parts of his testimony on that basis. The defendant was entitled to call Hammitt, whose testimony rebutted that of Davis.

The plaintiff argues, as its third assignment of error, the prejudicial effect of the admission into evidence of circumstances surrounding the $40,000 settlement by one of the other guarantors of the Boetel notes. In the setting of and under the circumstances of this case, the assignment of error is without merit. Lyle E. Davis was asked by the plaintiff on direct examination whether the bank had received payments on the loan. Davis replied that he had received some money from one guarantor. He was then asked: "What was the amount received from one guarantor?" Davis responded: "$40,000." On cross-examination, defense counsel pursued the matter to show that the guarantor was an attorney who had drawn a number of the closing documents and was not a stranger to the loan transaction. In this manner, defense counsel sought to distinguish his client's position from that of a guarantor whose settlement may have been interpreted as an admission of liability.

Section 27-106 (1), R. R. S. 1943, provides: "When part of an act, declaration, conversation or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other * * *." The plaintiff invited the testimony and cannot be now heard to complain that its invitation was accepted.

The plaintiff's final assignment of error involves two jury instructions. There was no objection to these instructions at the time of submission. Ordinarily, the failure to object to instructions after they have been submitted to counsel for review will preclude raising an objection on appeal. See Flinn Paving Co., Inc. v. Sanitary & Improvement Dist. No. 227, 198 Neb. 542, 254 N. W. 2d 78. The plaintiff concedes this point and urges that this court examine its assignment of error under the rule that plain error in the record, indicative of a probable miscarriage of justice, may be considered. See McCready v. Al Eighmy Dodge, 197 Neb. 684, 250 N. W. 2d 640. However, a review of the challenged instructions reveals neither plain error nor a probable miscarriage of justice.

The plaintiff contends that there was no evidence to support instruction No. 3. Instruction No. 3 dealt with acts the defendant alleged were willfully or negligently performed by plaintiff and thereby deprived defendant of the benefits of his security and means of payment. Specifically, plaintiff objects to the inclusion as one of these acts: "3. Plaintiff's failure to obtain the certificate of deposit in the amount of $150,000.00 and plaintiff's actions in disbursing money from the certificate of deposit for purposes other than as security for the loan, as required by commitment letter and loan agreement; * * *." While the plaintiff maintained at trial that it was bound to disburse the certificate of deposit to Boetel even after default, the assignment of the certificate gave the bank the "right to apply the principal evidenced by such Certificate to the indebtedness of Boetel and Co. and Boetel Properties, Inc." There was evidence by both plaintiff and defendant on the issue and it was a proper subject for jury instruction. Another part of instruction No. 3, to which the plaintiff now objects, was proper. The plaintiff contends that the failure of the bank to obtain Boe-

tel's financial statement should not have been submitted. The commitment letter in evidence provided that the financial statements of Boetel were required; defendant was entitled to rely on the letter. The evidence warranted the instruction.

Instruction No. 9 partially involved the proceeds from the sale of a section of Georgetown property. The defendant alleged that the plaintiff was bound under the repayment plan outlined in the commitment letter to obtain those proceeds and apply them to the principal of the loan. The plaintiff stated that it had an agreement with Boetel that the section of Georgetown at issue be excluded from the proceeds clause. The defendant denies knowledge of the agreement. The issue was properly for the jury.

The jury obviously concluded that the plaintiff failed to acquire or protect the security for the loan. That finding is supported by the evidence. A jury verdict based on conflicting evidence should not be set aside on appeal unless clearly wrong. First Mid America, Inc. v. Palmer, 197 Neb. 224, 248 N. W. 2d 30. This finding constitutes a defense to the obligation of the defendant since a guarantor is not liable on his own contract where the creditor has violated his own obligations and deprived the guarantor of the means of preventing the loss protected by the guaranty. See, First Nat. Bank v. Wheatley, 92 Neb. 807, 139 N. W. 673; Custom Leasing, Inc. v. Carlson Stapler & Shippers Supply, Inc., 195 Neb. 292, 237 N. W. 2d 645.

The decision of the District Court is affirmed.

AFFIRMED.