DOUGLAS D. KLUVER, IN HIS CAPACITY AS TRUSTEE OF THE RONALD B. ROOTS IRREVOCABLE TRUST, ET AL., APPELLANTS AND CROSS-APPELLEES, V. RICHARD P. DEAVER AND CLARA E. DEAVER, HUSBAND AND WIFE, AND RESOURCE RECYCLING, INC., APPELLEES, AND WASTE MANAGEMENT OF NEBRASKA, INC., APPELLEE AND CROSS-APPELLANT.

714 N.W.2d 1

Filed May 12, 2006.    No. S-05-104.

Steven E. Achelpohl for appellant Douglas D. Kluver.

Thomas J. Guilfoyle, of Erickson & Sederstrom, for appellant Timothy J. McReynolds.

Dana C. Bradford III and Richard J. Coenen, of Bradford & Coenen, L.L.C., for appellant FRB Partnership.

John R. Douglas and Terry J. Grennan, of Cassem, Tierney, Adams, Gotch & Douglas, for appellee Waste Management of Nebraska, Inc.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ., and HANNON, Judge, Retired.

CONNOLLY, J.

Douglas D. Kluver, Timothy J. McReynolds, and FRB Partnership (collectively the appellants) appeal the district court's order granting summary judgment for the appellees, Richard P. Deaver and Clara E. Deaver; Resource Recycling, Inc.; and Waste Management of Nebraska, Inc. (Waste Management). This appeal involves a contract for royalties that was previously before this court concerning different issues. See *Bauermeister v. McReynolds*, 253 Neb. 554, 571 N.W.2d 79 (1997), *modified* 254 Neb. 118, 575 N.W.2d 354 (1998). FRB Partnership holds the rights of Fred H. and Dorothy L. Bauermeister and their son, Robert A. Bauermeister (collectively the Bauermeisters), who were parties to the initial contract at issue. Kluver is the trustee of the Ronald B. Roots Irrevocable Trust. Ronald Roots was a joint venture partner with the Bauermeisters. The appellants argue that the contract is ambiguous and that parol evidence would resolve the ambiguity to show that Waste Management owes royalties to them under the contract. We determine that the contract is unambiguous and that there are no issues of material fact preventing summary judgment. Accordingly, we affirm.

## BACKGROUND

This action concerns a purchase agreement for land used as the Douglas County, Nebraska, landfill. In 1988, Douglas County announced that it would accept bids for private ownership and operation of the landfill. Before 1988, Roots and Fred and Robert Bauermeister entered into a joint venture agreement for submitting a bid for operation and ownership of the landfill. Waste Management then contacted McReynolds and expressed an interest in collaborating with members of the joint venture in making a bid.

Waste Management entered into a purchase agreement to purchase property from Fred and Dorothy Bauermeister and the

Deavers to make a bid. Waste Management, under the contact, agreed to pay a monthly base payment of $3,000 plus a $1 per ton royalty fee. The contract incorporated an earlier lease agreement and was subject to an assignment agreement. The relevant portions of the contract are as follows:

1. AWARD OF LANDFILL CONTRACT: This Agreement is contingent upon the award from Douglas County, Nebraska ("County") to [Waste Management] of a contract ("Contract") to operate a sanitary landfill ("Landfill") within Douglas County, Nebraska, on the Premises . . . .

2. PROPERTY DESCRIPTION: Seller agrees to sell to [Waste Management] and [Waste Management] agrees to purchase certain real estate containing approximately two hundred eighty (280) acres of land and situated in Douglas County, Nebraska, more particularly described on Schedule A attached . . . .

3. TERMS OF SELLER BENEFITS: Seller shall have and hold all benefits granted pursuant to this Agreement for a term commencing on the date upon which [Waste Management] commences construction of the Landfill at the Premises ("Commencement Date"), and continuing for a term of twenty-five (25) years from the Commencement Date or until the Premises has reached the total capacity provided for in the Contract or any renewals, extensions, enlargements or modifications thereof whether by bid, change order or otherwise, unless earlier terminated as provided hereunder ("Term"). . . .

. . . .

22. NO JOINT VENTURE: The relationship of the parties hereunder is that of Seller and [Waste Management] and nothing contained herein shall be construed to make the parties hereto partners or joint venturers, nor shall either party hereto be entitled to bind the other in any manner by its actions, except as otherwise expressly provided herein.

Waste Management then entered into a contract with Douglas County for operation of the landfill, known as the Douglas County Recycling and Disposal Facility (RDF Landfill). In December 1998, the Department of Environmental Quality (DEQ) sent Waste

Management a letter regarding a modification allowing Waste Management to increase capacity by 3 million cubic yards. The modification was granted in February 1999, and the record contains an affidavit averring that the additional amount was placed in the RDF Landfill before November 19, 2003.

On November 19, 2003, the RDF Landfill ceased operation because it had reached its permitted final elevations under its permit from the DEQ. Immediately thereafter, Waste Management began operation of a second Douglas County landfill, the Pheasant Point Landfill, on a site directly east of the Bauermeister land. Waste Management had purchased the Pheasant Point Landfill from Papio Development Co., L.L.C. The Pheasant Point Landfill was operated under a separate contract with Douglas County. At that time, Waste Management stopped paying royalties to the appellants under the contract.

The appellants filed a complaint alleging that they were also entitled to royalties on the Pheasant Point Landfill. According to one of two affidavits submitted by McReynolds, appellants and Waste Management agreed that "the written agreement reflecting our joint and collaborative efforts would provide for our participation in expansions and modifications of the landfill to adjacent properties." The appellants moved to take discovery depositions, and Waste Management filed a motion to quash.

Waste Management moved for summary judgment. The district court determined that the contract was unambiguous and that there was no issue of material fact that the term had run under the contract. Thus, the appellants were not entitled to royalties on the Pheasant Point Landfill. Therefore, the court granted Waste Management's motion for summary judgment and ruled that the appellants' discovery motion was moot. The appellants filed an appeal, and Waste Management cross-appeals the decision of the court to allow McReynolds' affidavits into evidence.

## ASSIGNMENTS OF ERROR

The appellants assign, rephrased and consolidated, that the district court erred by (1) granting summary judgment because the contract contained a patent or latent ambiguity allowing for parol evidence and because the contract must be read in conjunction with the lease agreement and assignments, (2) granting

summary judgment when there was an issue of material fact whether the landfill had reached capacity before it ceased operation, and (3) prohibiting discovery. On cross-appeal, Waste Management assigns that the court erred by accepting into evidence two affidavits from McReynolds.

## STANDARD OF REVIEW

■ The meaning of a contract and whether a contract is ambiguous are questions of law. *Gary's Implement v. Bridgeport Tractor Parts*, 270 Neb. 286, 702 N.W.2d 355 (2005).

■ On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Id.*

## ANALYSIS

The appellants contend that the contract is ambiguous because a question exists whether the Pheasant Point Landfill located on adjoining property was part of the "premises" under the contract. They argue that the contract involved a business opportunity and that the Pheasant Point Landfill is a " 'renewal, extension, enlargement or modification by bid, change order or otherwise' " under paragraph 3 of the contract. Brief for appellants at 17.

■ A court interpreting a contract must first determine as a matter of law whether the contract is ambiguous. See *Hillabrand v. American Fam. Mut. Ins. Co., ante* p. 585, 713 N.W.2d 494 (2006). A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms. *Gary's Implement v. Bridgeport Tractor Parts, supra.* A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Hillabrand v. American Fam. Mut. Ins. Co., supra.* Also, a contract must receive a reasonable construction and must be construed as a whole, and if possible, effect must be given to every part of the contract. See *Baker's Supermarkets v. Feldman*, 243 Neb. 684, 502 N.W.2d 428 (1993).

Reading the contract as a whole, it is unambiguous. The contract specifically states the location of land at issue and defines the "premises" as consisting of that specific land. The contract then provides that it terminates after 25 years or when the landfill

reached capacity. The record shows that capacity was reached on November 19, 2003. The appellants, however, argue that there is an issue of material fact concerning whether capacity was reached, but the record contains no evidence to dispute that the permit levels authorized by the DEQ had been reached by November 19, 2003, and no evidence to dispute an affidavit averring that all additional permitted amounts had been deposited in the landfill by that date. Therefore, there is no issue of material fact that the contract expired on November 19, 2003.

The appellants also argue that an issue of material fact exists whether Waste Management's operation of the Pheasant Point Landfill constituted "renewals, extensions, enlargements or modifications thereof whether by bid, change order or otherwise" under paragraph 3 of the contract. We disagree.

When considering the contract as a whole, it contemplates a specific, legally described parcel of land and a specific landfill to be operated on that land. Thus, any renewals, enlargements, extensions, or modifications of the landfill subject to the contract would occur on that specific land. Here, the Pheasant Point Landfill opened after the contract expired. Further, it is on entirely separate land not owned by the appellants and is subject to a separate contract between Waste Management and Douglas County. If separate landfills created by Waste Management on nearby, but separate properties, constituted an enlargement or extension of the "premises," the appellants could demand royalties in perpetuity from Waste Management for landfills on adjoining land it now owns or would purchase in the future—something that is contrary to a reasonable construction when considering the contract as a whole.

The appellants next contend that the contract was not just for the sale of land, but was also for a business opportunity. Thus, they argue that it contemplated an enlargement or extension to adjoining properties. The appellants cite to *Bauermeister v. McReynolds*, 253 Neb. 554, 571 N.W.2d 79 (1997), *modified* 254 Neb. 118, 575 N.W.2d 354 (1998), to argue that we have previously recognized the contact as a "joint venture." But *Bauermeister* did not concern the relationship between the appellants and Waste Management, nor did it require consideration of the terms of the contract that are at issue in this appeal.

Instead, we look to paragraph 22 of the contract which states that no joint venture was created.

Finally, the appellants contend that there is a latent ambiguity in the contract about the intention of the parties when they defined the term "premises" and the effect of renewals, enlargements, extensions, or modifications. They argue that they should be allowed to present evidence to show that an ambiguity exists and to conduct further discovery to present their case. We disagree.

A latent ambiguity exists when collateral facts make the meaning of the contract uncertain. *Plambeck v. Union Pacific RR. Co.*, 244 Neb. 780, 509 N.W.2d 17 (1993). In *Plambeck*, citing to a contested will case, we gave an example of the type of latent ambiguity that would justify the use of extrinsic evidence to show the intent of the parties, stating: "For example . . . if two or more persons satisfy a description of one devisee, there is a latent ambiguity, and extrinsic evidence is admissible to disclose and remove that ambiguity." 244 Neb. at 784, 509 N.W.2d at 20. In such a case, extrinsic evidence becomes necessary to properly construe the contract.

Here, there is not a latent ambiguity that makes extrinsic evidence necessary. Instead, the appellants are disputing the interpretation of the terms within the contract and the plain language of the contact controls. Because the parties to a document have or suggest opposing interpretations does not necessarily, or by itself, compel a conclusion that the document is ambiguous. See *Baker's Supermarkets v. Feldman*, 243 Neb. 684, 502 N.W.2d 428 (1993). Thus we determine that under the plain language of the contract, it expired before the Pheasant Point Landfill opened, the Pheasant Point Landfill was not part of the "premises" under the contract, and it did not constitute an enlargement or extension of the landfill. Because extrinsic evidence could not be used to interpret the contract, the court did not err when it granted summary judgment and when it did not grant further discovery. Accordingly, we affirm. Because we affirm, we do not reach Waste Management's cross-appeal.

AFFIRMED.

WRIGHT, J., not participating.