746 N.W.2d 672 (2008)
275 Neb. 310
STATE of Nebraska ex rel. Jon BRUNING, Attorney General of the State of Nebraska, appellant,
v.
R.J. REYNOLDS TOBACCO COMPANY et al., appellees.
No. S-06-1027.
Supreme Court of Nebraska.
March 28, 2008.
*674 Jon Bruning, Attorney General, David Cookson, and Frederick J. Coffman for appellant.
Patrick O'Brien, of Butler, Gaiter, O'Brien & Boehm, and, of Counsel, Robert J. Brookhiser and Elizabeth B. McCallum, Washington, DC, of Howrey, L.L.P., for appellees Commonwealth Brands, Inc., et al.
Michael F. Coyle and Danene J. Tushar, Omaha, of Fraser Stryker, P.C., L.L.O., and Thomas J. Frederick, Chicago, IL, of Winston & Strawn, L.L.P., for appellee Philip Morris USA, Inc.
Gerald Friedrichsen and Andrew M. Bath, of Fitzgerald, Schorr, Barmettler & Brennan, PC, L.L.O., Omaha, for appellees R.J. Reynolds Tobacco Company and Lorillard Tobacco Company.
Stephen R. Patton, PC, and Douglas G. Smith, of Kirkland & Ellis, L.L.P., Chicago, IL, for appellee R.J. Reynolds Tobacco Company.
Gayle Rosenstein, of Weil, Gotshall & Manges, L.L.P., New York, NY, for appellee Lorillard Tobacco Company.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
MILLER-LERMAN, J.

NATURE OF CASE
The sole issue presented in this appeal, aside from the propriety of the exercise of our appellate jurisdiction, is whether the current dispute between the State of Nebraska and various tobacco companies is subject to arbitration under the arbitration provisions of the Master Settlement Agreement (the MSA) to which the State and the tobacco companies are parties. The State of Nebraska ex rel. Jon Bruning, Attorney General, filed a complaint in the district court for Lancaster County seeking a declaration that a downward adjustment to an annual payment to be made by the tobacco companies to the State under the MSA should not be allowed. The court determined that the terms of the MSA required that the issue raised in the complaint should be decided by arbitration. The district court entered an order compelling arbitration and dismissed the complaint. The State appeals. We affirm.

*675 STATEMENT OF FACTS
The State of Nebraska and various other states and jurisdictions (the settling states) are parties to the MSA with various tobacco companies, including, inter alia, R.J. Reynolds Tobacco Company; Philip Morris USA, Inc.; and Lorillard Tobacco Company (collectively the tobacco companies). The parties entered into the MSA in 1998 after various states separately sued the major U.S. tobacco companies to recover costs the states had incurred in treating smoking-related illnesses. The State of Nebraska had sued the tobacco companies in the district court for Lancaster County. A consent decree was entered in the district court in December 1998 approving the MSA. State ex rel. Stenberg v. R.J. Reynolds Tobacco Co., Lancaster County District Court, docket 573, page 277. The above-named tobacco companies were the original parties to the MSA; approximately 40 other tobacco companies subsequently joined as parties to the MSA.
The MSA requires, inter alia, that the tobacco companies make an annual payment to the settling states to offset public health costs. The annual payment is determined each year by an independent auditor who is required to follow a complex formula set forth in the MSA. Each tobacco company pays its share of the determined amount into a single escrow account, and the independent auditor allocates a share of the total to each settling state. The independent auditor is given the responsibility for calculating and determining the amount of all payments owed by the tobacco companies under the MSA, including any adjustments, reductions, and offsets, as well the allocation of such payments. Because the auditor is required to determine various calculations, the MSA in § XI(d)(5) permits the independent auditor to make certain assumptions.
A concern of the parties to the MSA was that tobacco manufacturers who did not participate in the MSA would have an unfair market advantage over participating tobacco companies because such non-participating manufacturers would not be required to contribute to the annual payment and would not be subject to marketing and advertising restrictions placed on the participating tobacco companies pursuant to the MSA. To address such concerns, the MSA provides for a "Non-Participating Manufacturer" (NPM) adjustment if certain market and economic conditions exist. The NPM adjustment is a downward adjustment to the annual payment which is otherwise to be made by the participating tobacco companies to the states. The NPM downward adjustment is made if (1) the participating tobacco companies collectively suffer a loss-of-market share to the non-participating manufacturers and (2) an economic consulting firm determines that the disadvantages the participating tobacco companies experienced as a result of the provisions of the MSA were a significant factor contributing to the loss-of-market share. However, even when such conditions exist, specific states may avoid the NPM downward adjustment by enacting and enforcing statutes imposing certain requirements on the non-participating manufacturers. To the extent a settling state establishes that it had a qualifying statute in effect and that it "diligently enforced" such statute, that settling state's allocated share of the annual payment is not reduced by the NPM adjustment. When it is determined that a NPM adjustment is required for a particular year, the NPM adjustment is to be applied against payments due in a later year.
The present case involves a dispute over an NPM adjustment for the year 2003. The independent auditor determined that no NPM downward adjustment should be *676 applied for the year 2003. In response, the tobacco companies have disagreed and asserted that the NPM adjustment should have been applied to reduce their annual payments due in 2006. In reaching its NPM-related determination, the independent auditor had concluded that the participating tobacco companies had collectively experienced a qualifying loss-of-market share and that the economic consulting firm had determined that the provisions of the MSA had been a significant factor contributing to such loss-of-market share, but that the settling states had presumably diligently enforced their qualifying statutes. The tobacco companies generally assert that in making the determination that no NPM adjustment should be applied, the independent auditor made a finding that each settling state had enacted a qualifying statute, but that the independent auditor had simply assumed but failed to find that each settling state had diligently enforced its qualifying statute. The tobacco companies disputed the independent auditor's refusal to apply the NPM adjustment based on a mere presumption of diligent enforcement. The settling states take the position that all the settling states had enacted qualifying statutes that were in full force and effect and that therefore, no NPM downward adjustment was warranted. In view of this dispute, the tobacco companies withheld a portion of the annual payment for 2006.
The settling states filed actions in their respective jurisdictions seeking to compel the tobacco companies to pay the full annual payment. The State of Nebraska filed the present action giving rise to this appeal in the district court for Lancaster County seeking a declaration that in 2003, the State had diligently enforced its qualifying statutes, Neb.Rev.Stat. §§ 69-2702 and 69-2703 (Reissue 2003), and that therefore, no NPM adjustment should be applied to the State's share of the annual payment from the tobacco companies.
In response to the State's complaint, the tobacco companies moved the court to compel arbitration and to dismiss or stay the declaratory judgment action pending the outcome of such arbitration. The tobacco companies asserted that the MSA required arbitration of disputes regarding the independent auditor's calculation of annual payments. The tobacco companies relied in part on § XI(c) of the MSA. Section XI is titled "Calculation and Disbursement of Payments" and subsection (c) provides:

Resolution of Disputes. Any dispute, controversy or claim arising out of or relating to calculations performed by, or any determination made by, the Independent Auditor (including, without limitation, any dispute concerning the operation or application of any of the adjustments, reductions, offsets, carry-forwards and allocations described in subsection IX(j) or subsection XI(i)) shall be submitted to binding arbitration before a panel of three neutral arbitrators, each of whom shall be a former Article III federal judge. Each of the two sides to the dispute shall select one arbitrator. The two arbitrators so selected shall select the third arbitrator. The arbitration shall be governed by the United States Federal Arbitration Act.
The district court agreed with the tobacco companies' argument that the issues in this case were subject to arbitration. The court noted that § VII(a) of the MSA provided that as to the State of Nebraska, the district court for Lancaster County retained exclusive jurisdiction for the purposes of implementing and enforcing the MSA and that except as provided in other sections of the MSA including the arbitration provision in § XI(c), the court was the *677 only court to which disputes under the MSA as to the State of Nebraska were to be presented. The court concluded, however, that it did not have jurisdiction over "matters arising from or relating to Section XI(c)." The court concluded that the determination of whether a settling state diligently enforced its qualifying statute was an integral part of the independent auditor's calculations under the MSA and as such the determination was subject to the binding arbitration requirement of § XI(c). The court therefore ordered arbitration and dismissed the State's action.
The State appeals the order. We granted the tobacco companies' petition to bypass the Nebraska Court of Appeals.

ASSIGNMENT OF ERROR
The State asserts that the district court erred in ordering the parties to arbitrate the issue of whether the State had diligently enforced its qualifying statute during the year 2003 and in dismissing the action.

STANDARD OF REVIEW
[1] A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law. State v. Hudson, 273 Neb. 42, 727 N.W.2d 219 (2007).
[2] The interpretation of a contract involves a question of law, in connection with which an appellate court has an obligation to reach its conclusions independently of the determinations made by the court below. Hans v. Lucas, 270 Neb. 421, 703 N.W.2d 880 (2005).

ANALYSIS

The Order Compelling Arbitration and Dismissing the Action Is Final and Appealable.
[3,4] We note first that before this appeal was moved to this court's docket, the tobacco companies moved the Court of Appeals for summary dismissal on the basis of lack of appellate jurisdiction. The tobacco companies argued that the order compelling arbitration was not a final, appealable order. The Court of Appeals declined to decide the issue in summary fashion and therefore overruled the motion for summary dismissal. Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. Goodman v. City of Omaha, 274 Neb. 539, 742 N.W.2d 26 (2007). We determine that the order compelling arbitration and dismissing the declaratory judgment action is a final order and that this court has jurisdiction to consider the appeal.
The tobacco companies assert that although § XI(c) of the MSA provides that arbitration under the MSA shall be governed by the federal Arbitration Act (the FAA), 9 U.S.C. §§ 1 to 307 (2000 & Supp. V 2005), the issue whether a state court's order regarding arbitration is an appealable order is a question of state law. In this regard, they direct our attention to Nebraska's Uniform Arbitration Act which provides in Neb.Rev.Stat. § 25-2620 (Reissue 1995) that appeals may be taken from certain orders regarding arbitration and that although § 25-2620 lists an order denying an application to compel arbitration as appealable, the statute does not specifically list an order compelling arbitration. The tobacco companies therefore claim that this court lacks jurisdiction. We do not agree.
[5] In a previous case involving arbitration governed by the FAA, we held that an order denying a motion to compel arbitration under the FAA is a final, appealable order. Webb v. American Employers *678 Group, 268 Neb. 473, 684 N.W.2d 33 (2004). We stated that to determine whether such an order involving the FAA is appealable, "we must first apply our state procedural rules to determine if the order is final for purposes of appeal and then determine whether the result of that inquiry would undermine the goals and policies of the FAA." 268 Neb. at 481, 684 N.W.2d at 41. We apply a similar analysis to determine whether an order compelling arbitration under the FAA and dismissing a declaratory judgment action is a final, appealable order.
[6] Under Neb.Rev.Stat. § 25-1902 (Reissue 1995), the three types of final orders which may be reviewed on appeal are (1) an order which affects a substantial right and which determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after judgment is rendered. In re Estate of Rose, 273 Neb. 490, 730 N.W.2d 391 (2007); Webb, supra. In the present case, the district court entered an order compelling arbitration. In addition to compelling arbitration, the district court dismissed the State's declaratory judgment action rather than merely staying the action pending arbitration. Because "the contractual benefit of arbitrating the dispute between the parties [under the FAA] as an alternative to litigation" is ordinarily a substantial right, see Webb, 268 Neb. at 481, 684 N.W.2d at 41, and because the court dismissed the declaratory judgment action, we determine that under § 25-1902, the order was a final order of the first type, i.e., one which affected a substantial right and which determined the action and prevented a judgment. The order to dismiss the action determined the action and prevented the State from receiving the declaratory judgment that it sought. We therefore conclude that under § 25-1902, the order is a final order for purposes of appeal.
We further determine that our conclusion that the order is final and appealable does not undermine the goals and policies of the FAA. We note that in cases decided under the FAA, federal courts have held that an order compelling arbitration and dismissing, rather than staying, the action is appealable. In Green Tree Financial Corp.-Ala. v. Randolph, 531 U.S. 79, 89, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), the U.S. Supreme Court held that where the trial court "has ordered the parties to proceed to arbitration, and dismissed all the claims before it, that decision is `final' within the meaning of [9 U.S.C.] § 16(a)(3) [of the FAA], and therefore appealable." Because the content of the order in this case if rendered by a federal court would be final and appealable under the FAA, we conclude that our determination that the order at issue is final and appealable under state law does not undermine the goals and policies of the FAA.
Because the order compelling arbitration and dismissing the State's action for declaratory judgment is a final order, we conclude that this court has jurisdiction over this appeal. We therefore proceed to consider the merits of the appeal.

The MSA Requires the Arbitration of Disputes Regarding the Determination of Diligent Enforcement of a Qualifying Statute, and the District Court Properly Ordered Arbitration and Dismissed the Action.
[7] The State asserts that the district court erred in ordering arbitration of the dispute regarding the State's diligent enforcement of its qualifying statute. The State generally argues that under the MSA, the dispute is subject to judicial resolution in the court designated in the MSA, rather than to arbitration. We conclude that the MSA requires that the dispute *679 at issue in this case is subject to arbitration and that therefore, the district court did not err in ordering arbitration and dismissing the case.
We note first that the issue in this appeal has been considered in courts in numerous other settling states and that almost without exception, such courts have held that the MSA requires arbitration of the dispute. See State v. Philip Morris Inc., No. 2844, 2008 WL 271827 at *5 n. 10 (Md.App. Feb. 1, 2008) (in opinion filed February 1, 2008, listing most recent decisions and stating that of courts in 45 states and Puerto Rico having decided the issue, all but one determined that dispute was subject to arbitration). Such courts were applying the same language of the MSA that is at issue in this case, and therefore, the reasoning of such courts is persuasive. However, we must independently decide the issue pursuant to Nebraska law.
[8,9] We have stated that arbitration is purely a matter of contract. Cornhusker Internat. Trucks v. Thomas Built Buses, 263 Neb. 10, 637 N.W.2d 876 (2002). A party cannot be required to submit a dispute to arbitration unless he or she has agreed to do so. Kelley v. Benchmark Homes, Inc., 250 Neb. 367, 550 N.W.2d 640 (1996), disapproved on other grounds, Webb v. American Employers Group, 268 Neb. 473, 684 N.W.2d 33 (2004). Arbitration of the dispute in this case is required only if the parties have so agreed in the MSA. Therefore, we must determine whether the MSA requires arbitration of the dispute involving whether the State has diligently enforced the qualifying statute, as such dispute relates to calculation of the annual payment and the NPM adjustment.
[10,14] In making our determination, we note certain standards regarding contract construction and interpretation. We have stated that a court interpreting a contract must first determine as a matter of law whether the contract is ambiguous. Kluver v. Deaver, 271 Neb. 595, 714 N.W.2d 1 (2006). A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms. Id. A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. Id. A contract must receive a reasonable construction and must be construed as a whole, and if possible, effect must be given to every part of the contract. Id. In connection with the arbitrability issue raised in this case, § XI(c) of the MSA provides that the FAA governs arbitration under the MSA, and we note that the FAA requires that any doubts regarding the scope of an arbitration clause be resolved in favor of arbitration. See Cornhusker Internal. Trucks v. Thomas Built Buses, supra.
The State believes that the present dispute should be decided in state court and relies heavily on § VII(a) of the MSA which broadly provides for judicial resolution of disputes relating to the MSA. In § VII(a), the parties to the MSA agree that the court in which the settlement was reached, which as to the State of Nebraska refers to the district court for Lancaster County, "shall retain exclusive jurisdiction for the purposes of implementing and enforcing [the MSA] as to such Settling State" and that the state district court "shall be the only court to which disputes under [the MSA] are presented as to such Settling State." The State argues that § VII(a) designates the district court as the forum for resolution of disputes related to the MSA, including the present dispute.
Contrary to the State's argument, we note that elsewhere in § VII(a), the district *680 court is designated as the forum to which disputes are presented except as provided in other specified subsections of the MSA, including § XI(c). We believe that the current dispute is to be arbitrated under § XI(c) and is therefore excepted from judicial resolution under § VII(a).
Section XI(c), as noted above, provides in relevant part as follows:
Any dispute, controversy or claim arising out of or relating to calculations performed by, or any determination made by, the Independent Auditor (including, without limitation, any dispute concerning the operation or application of any of the adjustments, reductions, offsets, carry-forwards and allocations described in subsection IX(j) or subsection XI(i)) shall be submitted to binding arbitration before a panel of three neutral arbitrators . . . .
By its terms, § XI(c) broadly requires arbitration for "[a]ny dispute . . . arising out of or relating to" the calculations and determinations made by the independent auditor. Under the MSA, the independent auditor is charged with calculating the annual payments, including the NPM adjustment. Calculation of the NPM adjustment necessarily requires determinations regarding whether the settling states had qualifying statutes and whether the settling states diligently enforced such statutes. Thus, the issue of diligent enforcement relates to a calculation performed by the independent auditor which is subject to arbitration under § XI(c).
Contrary to our conclusion, the State asserts that the issue whether a settling state diligently enforced a qualifying statute is not an issue subject to arbitration under § XI(c) because the MSA does not specifically list the determination as to a state's diligent enforcement as a duty of the independent auditor. Unlike the State, we do not read the scope of arbitration under § XI(c) as being limited to a list of designated determinations.
Section XI(c) refers broadly to disputes "arising out of or relating to" (emphasis supplied) the calculations and determinations made by the independent auditor. Diligent enforcement, although not specifically listed in XI(c), is an issue that has a direct impact on the calculation of the NPM adjustment, which in turn has a direct impact on calculation of the annual payment which the tobacco companies make to the States and which payment the auditor is required to determine under the MSA. Reading the MSA as a whole, see Kluver v. Deaver, 271 Neb. 595, 714 N.W.2d 1 (2006), a dispute regarding diligent enforcement is a dispute "relating to" the independent auditor's calculations and therefore a dispute subject to arbitration.
In sum, we determine that a dispute over the issue of diligent enforcement is a dispute "arising out of or relating to" the independent auditor's calculations and determinations and is therefore a dispute that § XI(c) requires to be arbitrated. Because the dispute is subject to arbitration pursuant to § XI(c), it is an exception to the provision in § VII(a) that disputes under the MSA are to be presented to the district court. The district court did not err in ordering arbitration and dismissing the State's action for declaratory judgment.

CONCLUSION
We conclude that the district court's order compelling arbitration and dismissing the State's action for declaratory judgment was a final order and that this court has jurisdiction to determine this appeal. We further conclude that the district court did not err in determining that the MSA requires arbitration of the dispute over diligent enforcement of the qualifying statute. We therefore affirm the court's order compelling *681 arbitration and dismissing the State's action for declaratory judgment.
AFFIRMED.