275 Neb. 665
FIRST NATIONAL BANK OF UNADILLA, COUNTRYSIDE BANK, APPELLANT,
v.
JACK D. BETTS, APPELLEE.
No. S-07-023.
Supreme Court of Nebraska.
Filed May 9, 2008.
David Watermeier, of Morrow, Poppe, Otte & Watermeier, P.C., L.L.O., for appellant.
Angelo M. Ligouri, of Ligouri Law Office, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.
WRIGHT, J.

NATURE OF CASE
The First National Bank of Unadilla, Countryside Bank (Bank), sought a judgment against Jack D. Betts, based on a guaranty Jack signed for a loan made to his son, Brad M. Betts. The Nemaha County Court entered judgment in favor of the Bank. Jack appealed to the district court for Nemaha County, which reversed the judgment of the county court. The Bank appeals.

SCOPE OF REVIEW
[1,2] The district court and higher appellate courts generally review appeals from the county court for error appearing on the record. Stover v. County of Lancaster, 271 Neb. 107, 710 N.W.2d 84 (2006). When a district court reverses a county court's judgment and enters findings, a higher appellate court still reviews the county court's judgment for errors appearing on the record. Thomas Lakes Owners Assn. v. Riley, 9 Neb. App. 359, 612 N.W.2d 529 (2000).
[3,4] When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. Stover, supra. However, in instances when an appellate court is required to review cases for error appearing on the record, questions of law are nonetheless reviewed de novo on the record. Id.

FACTS
Brad received a loan for $6,200 from the Bank in November 1995. At the time, Brad did not own real estate or have adequate assets to secure the loan, and Jack signed a guaranty for it. On April 27, 1996, Brad renewed the loan in the amount of $7,668.63, and Jack signed a guaranty for the renewal of the loan. Brad renewed the loan for a second time on July 21, 1998, in the amount of $11,951.71. The loan, referred to as "Note #8026," indicated that the security for the loan was a 1988 Dodge pickup and a 1988 Ford Mustang. The guaranty Jack signed for Note #8026 is the subject of this action.
On May 8, 2000, Brad and his wife, Elizabeth R. Betts, took out a loan from the Bank in the amount of $3,900. The loan, referred to as "Note #9200," was not a renewal and was not guaranteed by Jack. Brad and Elizabeth were employed, and their combined annual income was $52,880.
On May 15, 2000, Brad and Elizabeth were issued "Note #9224" in the amount of $19,418.26. The note was a renewal of Notes #8026 and #9200 and was secured by a deed of trust in a house in Lincoln, Nebraska. The note included $5,636.74 owed on Note #8026, $6,751.51 of new funds, $3,911.75 owed on Note #9200, and $3,118.26 for credit disability and joint credit life insurance.
Brad testified that the Bank's vice president, Bruce Hassler, had told him a guaranty from Jack was not needed for Note #9224 because there was enough equity in the house and because Brad and Elizabeth were both employed. Hassler prepared a financial statement which indicated Brad and Elizabeth had a net worth of $23,568. Brad testified that Hassler suggested that Note #8026 from July 1998 and Note #9200 from May 8, 2000, be combined because there was sufficient equity in the home and the parties were employed. The deed of trust and second mortgage on the house were the collateral used by the Bank for Note #9224. Brad stated that Hassler said Brad and Elizabeth could demonstrate creditworthiness based on their income and equity.
On December 17, 2003, the Bank received notification that Brad and Elizabeth's house in Lincoln was to be offered at a trustee's sale. After the Bank received no funds from the sale of the house, it sought to collect from Jack based on the guaranty he signed for Note #8026 in 1998. The Bank alleged that Jack owed $11,951.71 plus interest from and after August 8, 2002, the last date the Bank received a payment from Brad. The Bank claimed that Brad and Elizabeth's failure to make payments constituted a breach of Notes #8026 and #9224 and the personal guaranty.
In his answer, Jack asserted that the obligation under Note #8026 was terminated by Note #9224 and that Note #9224 was based on Brad and Elizabeth's assets, income, and creditworthiness.
At trial in the county court, Hassler testified that Jack had previously signed guaranties for Brad which had been required because the collateral of the two vehicles given by Brad was not of sufficient value to cover the loans. Hassler stated that Note #8026 renewed a prior note and included credit for $2,445.96 paid on a prior loan. Note #9200 was a bridge loan and was not an addition to or an extension of Note #8026. He said Note #9224 renewed Notes #8026 and #9200 and included additional funds of $6,751.51. Hassler said Note #9224 was intended to pay for home improvements to Brad and Elizabeth's house in Lincoln.
Hassler testified that at the time Note #9224 was executed, neither Brad nor Elizabeth met the Bank's standard of creditworthiness. Hassler claimed the Bank required that the 1998 guaranty on Note #8026 executed by Jack remain in place because Brad had been slow to pay on prior notes and there was not enough collateral when the Bank was "in second position on the house" due to an existing mortgage. Hassler said Brad and Elizabeth never met the Bank's standard of creditworthiness to authorize a new loan without a guaranty. Hassler testified that by March 2000, Brad had "corrected his overdrawn account." Hassler said that to determine whether to grant Note #9224, he prepared and relied on a financial statement based on information provided by Brad and Elizabeth. The Bank understood that Brad planned to make improvements to the house which would place the Bank in a better position. Hassler said that of the $19,000 loaned to Brad and Elizabeth, Jack had guaranteed $12,000, so the Bank was at risk for $7,000.
Jack testified that he guaranteed three loans between Brad and the Bankin November 1995, April 1996, and July 1998. He did not know the terms and conditions of the July 1998 loan before he executed the personal guaranty. On previous occasions, the Bank had always asked him to sign a new guaranty to go along with a new note, but when Notes #9200 and #9224 were issued in May 2000, no one from the Bank contacted him. He said it was the Bank's prior practice to notify him when Brad renewed a loan. He was not informed that the Bank intended to extend the guaranty on Note #8026 to Notes #9200 and #9224, and he took no action to revoke the 1998 guaranty.
The county court found that the guaranty for Note #8026 was an absolute unconditional continuing guaranty, which continued unless revoked or until full payment was made and all of Brad and Elizabeth's indebtedness was discharged. The court found that Brad and Elizabeth did not meet the Bank's standard of creditworthiness when they executed Note #9224.
In entering judgment for the Bank, the county court found that the guaranty executed by Jack on Note #8026 was extended by Note #9224. The court found that a default on Note #9224 occurred on December 17, 2003, when a notice of trustee's sale was issued. The court held that Jack had not taken any action to revoke the 1998 guaranty and that he was therefore still liable on the guaranty.
The county court concluded that the Bank was entitled to judgment on the limit of the guaranty in the principal sum of $11,951.71 plus interest at the rate specified in Note #9224 of 10 ½ percent from and after the last payment date of August 8, 2002, for a total of $5,081.61 as of August 25, 2006. Judgment was entered for the Bank in the total sum of $17,033.32 with interest to accrue on the principal until paid in full.
Jack appealed to the district court. The court found that the guaranty signed by Jack was not ambiguous or vague and that it was an absolute and unconditional guaranty to the Bank of the full and prompt payment when due of Note #8026, dated July 21, 1998, and any extensions, renewals, or replacements of it. However, contrary to the county court's finding, the district court found that the guaranty continued only until there was full payment and discharge of the indebtedness evidenced in Note #8026, its extensions, renewals, or replacements.
The district court concluded that under the terms of the guaranty, the indebtedness guaranteed by Jack did not include any obligations entered into between Brad and Elizabeth and the Bank after Brad and Elizabeth met the Bank's standard of creditworthiness. This standard was based upon Brad and Elizabeth's own assets and income. The court opined that the indebtedness guaranteed by Jack would not extend to Note #9224 if Brad and Elizabeth met the Bank's standard of creditworthiness when Note #9224 was issued, even though it was a renewal of Note #8026.
The district court found that the Bank failed to prove that Brad and Elizabeth did not meet the Bank's standard of creditworthiness and that it was clear error for the county court to so find. The district court concluded that this failure required a finding that the indebtedness created by Note #9224 was not subject to Jack's guaranty. It reversed the decision of the county court, entered judgment for Jack and against the Bank, and remanded the case to the county court for further proceedings.

ASSIGNMENTS OF ERROR
The Bank assigns as error: The district court erred and abused its discretion (1) in finding that the Bank failed to provide sufficient evidence to show that Brad did not qualify for the May 15, 2000, note on his own creditworthiness and (2) in holding that Jack was no longer liable under the terms of the guaranty because the Bank failed to sufficiently define its standard of creditworthiness.

ANALYSIS
The issue in this case is framed by the terms of the written guaranty signed by Jack on July 21, 1998. Jack guaranteed to the Bank the payment of Note #8026 and any extensions, renewals, or replacements referred to as "indebtedness." The guaranty provided that the term "indebtedness" shall not include "any obligations entered into between Borrower and Lender after the date" of the guaranty, including any extensions, renewals, or replacements of such obligations "for which Borrower meets the Lender's standard of creditworthiness based on Borrower's own assets and income without the addition of a guaranty." The guaranty stated:
No act or thing need occur to establish the liability of the [guarantor], and no act or thing, except full payment and discharge of all indebtedness, shall in any way exonerate the [guarantor] or modify, reduce, limit or release the liability of the [guarantor].
. . . .
. . . The liability of the [guarantor] shall be limited to a principal amount of $11,951.71 . . . plus accrued interest thereon . . . .
As framed by the terms of the guaranty, the issue is whether Brad and Elizabeth were creditworthy at the time they signed Note #9224. If Brad and Elizabeth were creditworthy, we must consider whether Note #9224 absolved Jack of any of the liability described in the guaranty.
[5-10] A guaranty is a contract by which the guarantor promises to make payment if the principal debtor defaults. NEBCO, Inc. v. Adams, 270 Neb. 484, 704 N.W.2d 777 (2005). To determine the obligations of the guarantor, this court relies on general principles of contract and guaranty law. Id. Because a guaranty is a contract, it must be understood in light of the parties' intentions and the circumstances under which the guaranty was given. Id. When the meaning of a guaranty is ascertained, or its terms are clearly defined, the liability of the guarantor is controlled absolutely by such meaning and limited to the precise terms. Eagle Run Square II v. Lamar's Donuts Internat., 15 Neb. App. 972, 740 N.W.2d 43 (2007), citing Knox v. Cook, 233 Neb. 387, 446 N.W.2d 1 (1989). The liability of the guarantor is not to be enlarged beyond the strict terms of the contract. Eagle Run Square II, supra, citing In re Estate of Fischer, 227 Neb. 722, 419 N.W.2d 860 (1988). A guaranty, as any other contract, must be interpreted by reference to the entire document, with meaning and effect given to every part of the guaranty whenever possible. Knox, supra.

BRAD AND ELIZABETH MET STANDARD OF CREDITWORTHINESS
The guaranty provided that the standard of creditworthiness was to be based on Brad's "own assets and income without the addition of a guaranty." There was no further definition of creditworthiness. The Bank's own financial statement showed that Brad and Elizabeth had sufficient net worth to cover the debt owed to the Bank. The Bank also took a deed of trust on the home owned by Brad and Elizabeth.
Based on the financial statement prepared by the Bank, Brad and Elizabeth's net worth exceeded the amount of the new loan. The financial statement showed that Brad and Elizabeth had a net worth of $23,568. His annual income was $30,000, and hers was $22,880. According to the financial statement, the home had a fair market value of $77,000 subject to a first mortgage of $63,500. The new note, #9224, included $9,550 of previous debt which was included on the liability side of the financial statement. In effect, the Bank was lending Brad and Elizabeth approximately $10,000 in new money.
We conclude that the county court was clearly wrong in finding that Brad and Elizabeth did not meet the Bank's standard of creditworthiness. The guaranty limited its creditworthiness requirement to the assets and income of the borrower, and there is no evidence to support the conclusion that Brad was not creditworthy. The couple's net worth exceeded the amount of the new loan, and about one-half of the existing debt was already listed on the liability side of the financial statement.
On appeal, the Bank argues that its determination of creditworthiness is a subjective standard which the Bank can employ. It asserts that "late payments and encumbrances are necessary factors in determining a borrower's assets and income." Brief for appellant at 14. However, the guaranty itself did not provide that the Bank could subjectively determine a borrower's creditworthiness. The guaranty specifically stated that the standard of creditworthiness was based on the borrower's own assets and income without the addition of a guaranty.
Based on this language, if the assets and income of the borrowers, Brad and Elizabeth, demonstrated creditworthiness, no guaranty would be needed. The Bank prepared a financial statement for Brad and Elizabeth that showed their net worth to be more than the amount of the note. In addition, the note included prior loan amounts that were also listed as liabilities in the financial statement. Thus, Brad and Elizabeth demonstrated their creditworthiness.

LIABILITY OF JACK AS GUARANTOR
Having determined that Brad and Elizabeth were creditworthy at the time they signed Note #9224, we proceed to consider whether the note released Jack from all liability.
When Note #9224 was signed, $5,636.74 remained on Note #8026, which was subject to Jack's guaranty. If Brad and Elizabeth were not creditworthy when Note #9224 was executed, Jack's liability on the guaranty would have increased to the guaranty's limit of $11,951.71 principal, plus all interest that accrued thereon. The county court determined that Jack's liability had been increased to $11,951.71 by Note #9224, and it entered judgment accordingly.
The question is whether Note #9224, which included $5,636.74 of existing indebtedness covered by the guaranty, extinguished Jack's liability because all new indebtedness was based upon Brad and Elizabeth's creditworthiness. The guaranty provided that if Brad entered into subsequent obligations for which he was creditworthy, then such obligations were not included as indebtedness of the guaranty.
We conclude that Note #9224 did not relieve Jack of liability for the $5,636.74 which existed under the guaranty at the time Note #9224 was executed. Any new indebtedness would not be Jack's responsibility under the guaranty because Brad and Elizabeth were creditworthy. The guaranty was not subject to any subsequent indebtedness for which Brad met the Bank's standard of creditworthiness.
However, the guaranty also provided that no act except full payment and discharge of all indebtedness shall release Jack's liability under the guaranty. At the time Note #9224 was executedcuted, existing indebtedness of $5,636.74 had not been paid. Thus, although no new indebtedness was subject to the guaranty, Note #9224 did not discharge the existing liability.
If we were to conclude that Note #9224 eliminated all liability under the guaranty, as the district court so determined, we would have to ignore the provision of the guaranty stating that no act except full payment and discharge of all indebtedness shall release the liability of the guarantor. The indebtedness of $5,636.74 has not been paid, and Jack remains liable for this amount plus accrued interest on such principal amount. Note #9224 did not increase the amount of the existing indebtedness, but $5,636.74 is still subject to the guaranty, and as to this part of the debt, the Bank may look to Jack for payment.

CONCLUSION
The judgment of the district court is affirmed in part and in part reversed, and the cause is remanded with directions to enter judgment in favor of the Bank and against Jack in the amount of $5,636.74 plus interest from August 8, 2002.
AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.