respondent is directed to pay costs and expenses in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 2012) and Neb. Ct. R. §§ 3-310(P) and 3-323 of the disciplinary rules within 60 days after an order imposing costs and expenses, if any, is entered by the court.

JUDGMENT OF DISBARMENT.

---

BRAUNGER FOODS, LLC, FORMERLY KNOWN AS TOBA
OF IOWA, LLC, DOING BUSINESS AS BRAUNGER
FOODS, APPELLANT, V. MICHAEL K. SEARS
AND HUNGRY'S NORTH, INC., APPELLEES.
___ N.W.2d ___

Filed June 14, 2013.    No. S-11-1109.

1. **Contracts.** Whether a contract exists is a question of fact.
2. **Judgments: Appeal and Error.** The trial court's factual findings in a bench trial of an action at law have the effect of a jury verdict and will not be set aside unless clearly erroneous.
3. **Contracts: Judgments: Appeal and Error.** The meaning of a contract is a question of law, in connection with which an appellate court has an obligation to reach its conclusions independently of the determinations made by the court below.
4. **Contracts: Guaranty.** A guaranty is interpreted using the same general rules as are used for other contracts.
5. **Contracts: Guaranty: Debtors and Creditors: Words and Phrases.** A guaranty is a contract by which the guarantor promises to make payment if the principal debtor defaults.
6. **Contracts: Guaranty: Appeal and Error.** To determine the obligations of the guarantor, an appellate court relies on general principles of contract and guaranty law.
7. **Contracts: Guaranty: Intent.** Because a guaranty is a contract, it must be understood in light of the parties' intentions and the circumstances under which the guaranty was given.
8. **Guaranty: Liability.** When the meaning of a guaranty is ascertained, or its terms are clearly defined, the liability of the guarantor is controlled absolutely by such meaning and limited to the precise terms.
9. **Contracts: Guaranty: Words and Phrases.** A guaranty is a collateral undertaking to answer for the payment of debt or the performance of a contract or duty, and when a guaranty is unambiguous, a court does not vary its terms by construing it with another instrument.

10.  **Guaranty.** The undertaking of a guaranty is independent of the promise of the
     principal obligation.

Petition for further review from the Court of Appeals, Irwin, Pirtle, and Riedmann, Judges, on appeal thereto from the District Court for Dakota County, Paul J. Vaughan, Judge. Judgment of Court of Appeals reversed, and cause remanded with directions.

Jeana L. Goosmann and Anthony L. Osborn, of Goosmann Law Firm, P.L.C., for appellant.

Jeffrey T. Myers for appellees.

Michael K. Sears, pro se.

Heavican, C.J., Connolly, Wright, Stephan, McCormack, and Cassel, JJ.

Per Curiam.
### NATURE OF CASE
Braunger Foods, LLC, filed this action against Michael K. Sears and Hungry's North, Inc. (Hungry's), seeking to recover amounts that Braunger Foods alleged were due for sales it had made on credit to Hungry's. The district court for Dakota County entered judgment against Hungry's for amounts it concluded were owing to Braunger Foods due to sales of products to Hungry's. However, the court concluded that a guaranty, by which Braunger Foods sought to hold Sears personally liable for the debt, was ineffective, and the court therefore entered no judgment against Sears. Braunger Foods appealed to the Nebraska Court of Appeals and assigned error to the district court's conclusion that the guaranty was not enforceable against Sears. Neither Hungry's nor Sears appealed the finding and money judgment against Hungry's based on Hungry's receipt of products from Braunger Foods. The Court of Appeals affirmed the district court's order. *Braunger Foods v. Sears*, 20 Neb. App. 428, 823 N.W.2d 723 (2012).

We granted Braunger Foods' petition for further review. We conclude that the guaranty was enforceable against Sears. We therefore reverse the decision of the Court of Appeals and

remand the cause to the Court of Appeals with directions to reverse the decision of the district court with respect to Sears and to remand the cause to the district court with directions to enter judgment against Sears in accordance with this opinion.

## STATEMENT OF FACTS

Braunger Foods sold food product supplies to Hungry's, a business owned by Sears. Braunger Foods began selling to Hungry's in 2004 on an open account. Hungry's began to fall behind on payments in 2006 but resumed timely payments later that year.

When Hungry's again began falling behind on payments in 2009, Braunger Foods put Hungry's on cash-on-delivery status. Before it would allow Hungry's to resume buying on credit, Braunger Foods asked Sears to sign certain documents that included a separate guaranty designed to obligate Sears personally for all debts to Braunger Foods incurred by Hungry's.

The documents Braunger Foods asked Sears to sign were included in a package titled "Confidential Customer Application & Account Form." The package included a page titled "Credit Application" and another page that contained two sections; one section was titled "Terms & Conditions," and another section was titled "Guaranty." Significant portions of the page titled "Credit Application" were left uncompleted, but Hungry's name, address, and business telephone number were listed on designated lines at the top of that page.

In the "Terms & Conditions" section of the other page, which section generally states that the customer is applying to Braunger for credit and that the customer agrees to certain terms and conditions of payment, Sears signed his name as "Officer/Owner/Partner" and identified Hungry's as the customer. The line designated for "Braunger Foods representative" was left blank. A line designated for the date was completed as "11-16-09."

The separate "Guaranty" section provided as follows:

> I/We, the undersigned, for in and [sic] consideration of Braunger Foods extending credit at my/our request to the business entity identified above, (hereinafter referred

to as the Customer) hereby personally guaranty payment of all obligations of the customer (including all interest, attorney fees and charges) to Braunger Foods ("the Indebtedness") and do hereby agree to bind myself to pay Braunger Foods on demand any sums which may become due it by the customer, whether or not demand has been made on the customer. It is understood that this guaranty is unconditional, and shall be continuing and irrevocable for such Indebtedness of the customer to Braunger Foods as presently or hereafter exists. The undersigned hereby waives all notices and demands of any kind, including notice of default or nonpayment or deferral for payment, and consent to any extensions of time to pay, modification or renewal of the above credit agreement or any release of modification of security for the indebtedness. The undersigned hereby waives and releases all rights of contribution or Indemnity by customer. Additionally, the undersigned guarantor(s) agree to pay, in the event the "Indebtedness" becomes delinquent, Braunger Foods' attorneys fees associated with collection of the "indebtedness" plus all attendant collection costs whether or not litigation is initiated. The undersigned also agrees that venue for any action brought will be in the state and county in which Braunger Foods branch supplying product is located. This guaranty is personal to the undersigned. Any notation of corporate capacity shall be taken as informational only and shall not effect [sic] the personal nature of the guaranty.

At the bottom of the "Guaranty" section, "Hungry's North Inc." was printed on a line designated as "Print Name" and Sears signed his name on the line below that line. We note that, contrary to a statement in the Court of Appeals' opinion that "[t]here [is a space] on the second page for the signature of a Braunger Foods representative . . . under the section containing the guaranty, but [that space was] left blank," see *Braunger Foods v. Sears*, 20 Neb. App. 428, 430, 823 N.W.2d 723, 725 (2012), there does not appear to be a space under the guaranty that is intended for the signature of a Braunger Foods representative.

After Hungry's again fell behind on payments, Braunger Foods filed this suit against Sears and Hungry's in April 2010 to recover the amount of unpaid invoices. After a bench trial, the district court entered judgment against Hungry's for the amount of unpaid invoices plus interest. The court specified that the unpaid amounts included $31,882.73 for sales of food products to Hungry's from September 5 through November 14, 2006, and $25,599.09 for sales of food products to Hungry's from October 7, 2009, through March 30, 2010. The court calculated interest on these amounts through the date of its order and entered a total judgment against Hungry's of $82,307.26 plus postjudgment interest. Although the district court's judgment reflects an implicit finding that there was a contracted arrangement between Braunger Foods and Hungry's, the court nevertheless concluded that the guaranty was not enforceable against Sears. As its reason for refusing to enforce the guaranty, the district court stated that at the bottom of the page on which the "Guaranty" appeared, there was a statement "'I/WE PERSONALLY GUARANTEE PAYMENT ON TERMS THAT ARE APPROVED,'" and that the credit application was "incomplete and never officially signed by anyone from" Braunger Foods. The court therefore entered no judgment against Sears personally.

Braunger Foods appealed to the Court of Appeals and claimed that the district court erred when it found that the personal guaranty was not enforceable against Sears. Neither Hungry's nor Sears appealed the finding and money judgment against Hungry's. The Court of Appeals affirmed the district court's judgment.

We granted Braunger Foods' petition for further review.

## ASSIGNMENT OF ERROR

Braunger Foods claims that the Court of Appeals erred when it concluded that the personal guaranty was not enforceable against Sears.

## STANDARDS OF REVIEW

[1,2] Whether a contract exists is a question of fact. *Gerhold Concrete Co. v. St. Paul Fire & Marine Ins.*, 269

Neb. 692, 695 N.W.2d 665 (2005). The trial court's factual findings in a bench trial of an action at law have the effect of a jury verdict and will not be set aside unless clearly erroneous. *McCully, Inc. v. Baccaro Ranch*, 284 Neb. 160, 816 N.W.2d 728 (2012).

[3] The meaning of a contract is a question of law, in connection with which an appellate court has an obligation to reach its conclusions independently of the determinations made by the court below. *Bedore v. Ranch Oil Co.*, 282 Neb. 553, 805 N.W.2d 68 (2011).

[4] A guaranty is interpreted using the same general rules as are used for other contracts. *Builders Supply Co. v. Czerwinski*, 275 Neb. 622, 748 N.W.2d 645 (2008).

## ANALYSIS

Braunger Foods claims that the Court of Appeals and the district court erred when they concluded that the personal guaranty was not enforceable against Sears. As explained below, we conclude that although the credit application as a whole was not complete, the guaranty was complete in itself without reference to the rest of the credit application, and that the guaranty applied to all credit extended by Braunger Foods to Hungry's, whether or not such credit was extended under the terms provided in the credit application or under the terms of other oral or implied agreements. Accordingly, we find merit to Braunger Foods' assignment of error and conclude that the guaranty is enforceable against Sears.

[5-8] A guaranty is a contract by which the guarantor promises to make payment if the principal debtor defaults. *First Nat. Bank of Unadilla v. Betts*, 275 Neb. 665, 748 N.W.2d 76 (2008). To determine the obligations of the guarantor, this court relies on general principles of contract and guaranty law. *Id.* Because a guaranty is a contract, it must be understood in light of the parties' intentions and the circumstances under which the guaranty was given. *Id.* When the meaning of a guaranty is ascertained, or its terms are clearly defined, the liability of the guarantor is controlled absolutely by such meaning and limited to the precise terms. *Id.*

In the view of both the district court and the Court of Appeals, the scope and enforceability of the guaranty in this

case depended on whether the credit application as a whole was a complete and enforceable contract. Both courts concluded that the credit application was not complete and that therefore, neither the guaranty nor any section of the credit application was enforceable. This reasoning was flawed.

[9,10] We have described a guaranty as a collateral undertaking to answer for the payment of debt or the performance of a contract or duty, and we have stated that when a guaranty is unambiguous, we do not vary its terms by construing it with another instrument. See *Builders Supply Co. v. Czerwinski, supra*. We have further stated that the undertaking of a guaranty is independent of the promise of the principal obligation. See *National Bank of Commerce Trust & Sav. Assn. v. Katleman*, 201 Neb. 165, 266 N.W.2d 736 (1978). Because a guaranty is a separate and independent agreement, we consider whether the guaranty in this case is itself enforceable, without reference to whether the entire credit application was complete and whether other sections of the application were enforceable.

Viewing the guaranty section as a separate agreement, we conclude that it was complete and enforceable against Sears with respect to any indebtedness Hungry's incurred for goods purchased on credit from Braunger Foods. The language of the guaranty states generally that, in exchange for Braunger Foods' extending credit to the identified business entity, Hungry's, the signer will "personally guaranty payment of all obligations of the customer . . . to Braunger Foods." The guaranty was signed by Sears, and contrary to a statement in the Court of Appeals' opinion, there was not a space at the bottom of the guaranty for the signature of a Braunger Foods representative.

The language of the guaranty does not limit its scope to obligations incurred as a result of sales made pursuant to the specific terms set forth in the credit application. The statement at the bottom of the guaranty that the signer guarantees payment "on terms that are approved" does not thereby limit the obligation to the terms stated in the application but, giving the language its plain and ordinary meaning, reasonably applies to all terms that are agreed to which logically includes

other terms agreed to and approved by the parties. See *McCully, Inc. v. Baccaro Ranch*, 284 Neb. 160, 816 N.W.2d 728 (2012) (terms of contract are to be accorded their plain and ordinary meaning). We conclude that the enforceability of the guaranty was not dependent on completion of the entire credit application and that instead, the guaranty was enforceable in itself.

The guaranty provides that Sears agrees "to pay . . . any sums which may become due." By its terms, the guaranty applied to any indebtedness Hungry's incurred for purchases on credit from Braunger Foods. Although the district court concluded that the sales terms of the incomplete credit application were not enforceable, the court nevertheless found that an agreement or agreements existed, whether oral or implied, between Braunger Foods and Hungry's for the sale of goods, because the court concluded that Hungry's owed Braunger Foods for sales made in 2006 and in 2009 through 2010 in the amount of $82,307.26, including prejudgment interest. No party disputed this conclusion either on appeal to the Court of Appeals or on further review to this court. Thus, the context in which we consider this appeal is that it is an established fact that Hungry's owes Braunger Foods $82,307.26 for the receipt of goods based on an enforceable agreement.

The district court found that the guaranty was not enforceable because the terms of sale provided for in the credit application were not approved. However, this finding was inconsistent with its undisputed finding that Hungry's owed Braunger Foods for unpaid invoices; such finding necessarily included a finding that the parties had agreed to and approved some terms for the sale of goods. Because the finding that Hungry's owed Braunger Foods certain amounts for unpaid invoices was not disputed, and Sears had guaranteed any indebtedness of Hungry's to Braunger Foods, it was clear error for the district court to find that the guaranty was not enforceable with respect to such amounts, and the Court of Appeals erred when it affirmed this determination.

The lack of the signature of a Braunger Foods representative does not alter our conclusion in this case in which Braunger Foods seeks to enforce the guaranty against Sears,

who personally signed the guaranty. Nebraska's statute of frauds, Neb. Rev. Stat. § 36-202 (Reissue 2008), provides in part that "every special promise to answer for the debt, default, or misdoings of another person" shall be void unless it is "in writing, and subscribed by the party to be charged therewith." In order for Braunger Foods to enforce the written guaranty against Sears, only Sears' signature was required, and the signature of a Braunger Foods representative was not required to make the guaranty enforceable against Sears.

The language of the guaranty undermines two other arguments made by Sears. First, Sears argues that because he wrote the name "Hungry's North Inc." above his signature and indicated his capacity as president, he was signing on behalf of Hungry's rather than himself, and that the effect of the guaranty was simply for Hungry's to guaranty its own indebtedness. However, the guaranty states, "This guaranty is personal to the undersigned. Any notation of corporate capacity shall be taken as informational only and shall not effect [sic] the personal nature of the guaranty." Therefore, under the guaranty's own terms, the inclusion of the name "Hungry's North Inc." and Sears' title as president vis-a-vis Hungry's are to be taken as informational only and the guaranty remains Sears' personal guaranty.

Sears also argues that if a guaranty exists, it applies only to credit extended after the guaranty was signed and not to debt that had already been incurred. Sears notes that the district court order indicated that the judgment against Hungry's includes amounts incurred both before and after the guaranty was signed by Sears. Contrary to Sears' argument, the guaranty states that the guaranty is "for such Indebtedness of the customer to Braunger Foods as presently or hereafter exists." Therefore, in consideration of Braunger Foods' extending further credit to Hungry's, Sears gave his personal guaranty both for debt existing at the time the guaranty was signed as well as for debt incurred thereafter. The guaranty therefore applies to all amounts that the district court found owing from Hungry's to Braunger Foods.

In sum, we conclude that the guaranty should be considered as an agreement separate from the rest of the credit application.

As such, the guaranty was complete, and by its terms, it was enforceable against Sears as to all amounts that the court found owing from Hungry's to Braunger Foods.

## CONCLUSION

We conclude that the Court of Appeals erred when it determined that the guaranty was not enforceable against Sears and when it therefore affirmed the district court's order. We reverse the decision of the Court of Appeals and remand the cause to the Court of Appeals with directions to reverse the decision of the district court as it pertains to Sears' guaranty and to remand the cause to the district court with directions to enter judgment against Sears in accordance with this opinion.

Reversed and remanded with directions.

Miller-Lerman, J., participating on briefs.

––––––––––––

State of Nebraska, appellee, v.
Gary L. Sikes, appellant.
___ N.W.2d ___

Filed June 14, 2013.    No. S-12-399.

1. **Statutes: Appeal and Error.** To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below.
2. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.
3. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.
4. **Sentences.** In imposing a sentence, the sentencing court is not limited to any mathematically applied set of factors.
5. ____. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts surrounding the defendant's life.
6. ____. A sentence at the maximum limit is still within that limit—it is only if the sentence exceeds the statutory limit that it becomes "excessive" as a matter of law.

Appeal from the District Court for Hall County: William T. Wright, Judge. Affirmed.