## CONCLUSION

We conclude that the district court erred when it failed to determine that the arbitration provision, section 6.B., was ambiguous and to thereafter resolve the ambiguity by considering appropriate extrinsic evidence. We therefore reverse the order of the district court which denied Gross' motion to compel arbitration, and we remand the cause for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

———————

KYLE KERCHER, APPELLEE AND CROSS-APPELLANT,
v. BOARD OF REGENTS OF THE UNIVERSITY
OF NEBRASKA ET AL., APPELLANTS
AND CROSS-APPELLEES.

___ N.W.2d ___

Filed March 20, 2015.    No. S-14-211.

1.  **Summary Judgment.** Summary judgment is proper if the pleadings and admissible evidence offered show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.
2.  **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives the party the benefit of all reasonable inferences deducible from the evidence.
3.  **Contracts: Judgments: Appeal and Error.** The meaning of a contract is a question of law, in connection with which an appellate court has an obligation to reach its conclusions independently of the determinations made by the court below.
4.  **Attorney Fees: Appeal and Error.** An appellate court reviews a court's award of attorney fees under Neb. Rev. Stat. § 48-1231 (Reissue 2010) for abuse of discretion.
5.  **Employment Contracts: Breach of Contract: Proof.** In an action for breach of an employment contract, the burden of proving the existence of a contract and all the facts essential to the cause of action is upon the person who asserts the contract.
6.  **Contracts.** When the terms of a contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them.

7. ____. A contract must receive a reasonable construction and must be construed as a whole, and if possible, effect must be given to every part of the contract.

8. **Judges: Words and Phrases.** A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

9. **Attorney Fees.** To determine proper and reasonable attorney fees, a court must consider several factors: the nature of the litigation, the time and labor required, the novelty and difficulty of the questions raised, the skill required to properly conduct the case, the responsibility assumed, the care and diligence exhibited, the result of the suit, the character and standing of the attorney, and the customary charges of the bar for similar services.

Appeal from the District Court for Lancaster County: Paul D. Merritt, Jr., Judge. Affirmed and remanded for further proceedings.

John C. Wiltse, of University of Nebraska, and Terry R. Wittler, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellants.

James C. Zalewski, of DeMars, Gordon, Olson, Zalewski & Wynner, and Maynard H. Weinberg, of Weinberg & Weinberg, P.C., for appellee.

Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

McCormack, J.

## NATURE OF CASE

Kyle Kercher filed a complaint alleging that the Board of Regents of the University of Nebraska and the University of Nebraska at Omaha (collectively the University) breached his employment contract when it removed him from his appointed professorship that he alleges was a part of his tenured appointment. The district court granted Kercher's motion for partial summary judgment on the issue of liability, and damages were stipulated by the parties. The University appeals the judgment against it. Kercher cross-appeals the district court's order awarding him attorney fees, because the court awarded only a portion of the fees requested for work done by a second attorney working on Kercher's behalf. We

affirm the judgment and the district court's order awarding Kercher attorney fees.

## BACKGROUND

In 2001, a fund was created by Terry Haney for the purpose of providing a stipend for a professorship within the Department of Gerontology (the Department) within the College of Public Affairs and Community Service (CPACS) at the University of Nebraska at Omaha. The professorship was designated as the "Terry Haney Chair of Gerontology." The fund agreement between Haney and the University of Nebraska Foundation (the Foundation) required that the individual selected for the appointment meet certain requirements, including possessing the "[a]bility and proven experience to conduct community outreach to include speeches, seminars, conferences and other training activities in order to advance knowledge pertinent to Gerontology." The fund agreement also states that the appointment lasts for 5 years, at which point the recipient is eligible for renewal for another 5-year period.

In 2005, Kercher applied for a faculty position within the Department. The position was titled "Distinguished Professor of Gerontology." The job posting stated that the "position involves teaching and research, especially the mentoring of graduate students." On July 15, 2005, B.J. Reed, the dean of CPACS, sent Kercher a letter which offered him an appointment at the University beginning August 15, 2005. The "Type" of appointment was described as "Continuous (tenured)." The "Rank" of the position was "The Terry Haney Distinguished Professor of Gerontology and Graduate Faculty." The offer provided that the salary was "$100,000 AY ($76,000 base plus $24,000 endowment from the . . . Foundation) paid in twelve equal monthly installments (September 2005 to August 2006)." The offer incorporated an attached statement from James Thorson, the chair of the Department at that time, which "outlines [Kercher's] initial assignment." The attached statement from Thorson made no reference to the terms of the fund agreement, nor did it make any specific reference to community outreach duties as a part of his appointment. The attached statement to the offer stated that Kercher's duties

would also include "Committee and/or other assignments as requested by the chair of the Department of Gerontology and/or the dean." The offer also incorporated the University's bylaws (the Bylaws) into the agreement. The fund agreement itself was not incorporated into the offer. Kercher accepted the offer on July 20, 2005.

Section 4.3(1) of the Bylaws lists the four types of appointments for faculty: (1) special appointment, (2) appointment for a specific term, (3) continuous appointment, and (4) health professions faculty appointment. Section 4.4.1 defines special appointments as any appointment that does not fall under one of the three other categories. Section 4.4.1(9) goes on to provide that "appointments supported by funds over which the University does not have control or which the University cannot reasonably expect to continue indefinitely" can only be filled by special appointment. Additionally, faculty members "may hold a 'Special Appointment' coincident with . . . a 'Continuous Appointment,' and the terms of the Special Appointment may be independent of the terms of the other appointment status as a faculty member." While the Bylaws state that special appointments are terminable with 90 days' notice, section 4.4.3 provides that a continuous appointment is "terminable only for adequate cause, bona fide discontinuance of a program or department, retirement for age or disability, or extraordinary circumstances because of financial exigencies."

The Bylaws also provide a clear procedure for the creation of faculty appointments. Section 4.3(a) provides that "[e]very appointment by the University . . . shall be in writing and signed by the Board [of Regents] or its authorized agent." Section 4.3(b) provides that "every faculty member appointed to a position . . . shall, when initially appointed, be given a written statement specifically stating and apportioning the faculty member's initial teaching, extension, service, research, and administrative responsibilities."

In 2006, Haney met with Kercher, Thorson, and another faculty member. Haney informed Kercher of the criteria for the fund agreement and indicated that Kercher should engage in more community outreach. Kercher testified at deposition

that he did not believe Haney's request to be a contractual duty and considered the meeting to be "ceremonial." Kercher stated that he did not feel like he needed to meet Haney's expectations.

Throughout the rest of Kercher's initial 5-year term, Haney expressed concern to the new head of the Department, Julie Masters, and to Reed, the dean of CPACS, that Kercher was not fulfilling the community outreach requirements of the fund. On May 15, 2010, Haney sent the general counsel of the Foundation a letter indicating that "[p]er the recommendation of the college," Kercher's appointment should be extended for another year. Haney instructed that Kercher would be eligible for an additional 5-year extension if "Kercher meets the requirements of the outlined fund agreement."

On June 4, 2010, Reed sent an e-mail to Kercher informing him that the chair appointment was for 5 years and renewable "subject to the conditions of the fund agreement." This appears to be the first time Kercher was informed by someone employed by the University that the professorship was renewable and not permanent.

Shortly after that e-mail, Masters met with Kercher and provided him with a copy of the fund agreement, which outlined the criteria for the professorship. This was the first time that Kercher had been presented with a copy of the fund agreement. Masters also provided Kercher with a copy of the May 15, 2010, letter Haney had sent to the Foundation.

On July 28, 2010, which marked the end of the initial 5-year appointment, a senior vice chancellor at the University of Nebraska at Omaha informed Kercher that his appointment would be extended for another year "and may be extended for an additional period based on a review of your performance during this period."

On June 6, 2011, Masters sent Kercher an e-mail indicating that "Haney continues to express concern that the expectations of the fund, specifically community outreach, is [sic] not being met." Masters requested that Kercher provide information on how he was meeting the stated criteria of the professorship. Kercher never provided any information. On July 5, the senior vice chancellor informed Kercher that his

appointment would be renewed for another year but would not be extended again.

The University does not dispute that Kercher's base salary of $76,000 constitutes a continuous appointment, and Kercher still remains a tenured faculty member within the Department. Kercher has received no more than his base salary since September 2012.

On October 9, 2012, Kercher submitted to the risk manager's office at the University a claim for injury or damages against the University. Kercher filed his complaint in district court on October 30. On February 19, 2013, the University filed a motion for summary judgment, and on April 1, Kercher filed a motion for partial summary judgment on the issue of liability.

On October 18, 2013, the district court granted Kercher's motion for partial summary judgment and denied the University's motion for summary judgment. The court found that the offer made "no reference to any non-academic-related responsibilities," that there was "no evidence that anyone involved in the extending of the July 15 offer to . . . Kercher or . . . Kercher himself thought the money being contributed by the Foundation had any strings attached to it," and that it was

> clear and undisputed that . . . Kercher never agreed to assume or perform as part of his appointment any duties or responsibilities other than those referred to in the attachment to the July 15, 2005, letter or agreed to the contribution from the Foundation as part of his salary package being for a limited period of time or containing additional employment conditions.

Therefore, the district court concluded that "the offer to and acceptance by . . . Kercher was for a single Continuous (tenured) Appointment for an initial salary of $100,000 and did not include an additional Special Appointment." The court also found that Kercher did not agree to modify the contract.

After the district court entered its order granting Kercher's partial motion for summary judgment, the issue of damages was settled by stipulation of the parties, save for the issue of attorney fees. The district court determined that pursuant to

Neb. Rev. Stat. § 48-1231(1) (Reissue 2010), Kercher was entitled to attorney fees of not less than 25 percent of the award. The district court also determined that based on the complexity of the case, Kercher was entitled to an award in excess of the statutory minimum 25 percent.

James Zalewski, Kercher's primary attorney, submitted an affidavit that his normal billing rate is $225 per hour. Zalewski stated that he took three depositions, represented Kercher at his deposition, researched case law, and prepared the brief in opposition to the University's motion for summary judgment and the brief in support of Kercher's motion for partial summary judgment. Zalewski stated that he voluntarily reduced his fee and billed Kercher $28,694.26 for 171.8 hours of billable time. Based on his experience and qualifications, the district court found Zalewski's fee to be reasonable and awarded attorney fees to Kercher "in the amount of $28,694.[2]6."

M.H. Weinberg, the attorney Kercher initially retained, also submitted an affidavit. He stated that he was the attorney that initially developed the case and that he agreed to assist Zalewski in the case for $100 per hour. Weinberg, according to his affidavit, assisted Zalewski by "primarily gathering evidence, researching key legal issues, reviewing depositions, reviewing briefs, and making an argument to Judge Paul D. Merritt, Jr. of the Lancaster County District Court." Weinberg stated that he normally charges $150 to $175 per hour for this type of service. Based on his $100-per-hour fee, Weinberg had a total fee of $13,025 and an additional $141.70 in costs. Weinberg requested an award calculated at his ordinary rate of $175 per hour for a total award of $22,935.45.

John Wiltse, the attorney representing the University, submitted an affidavit in which he stated that he had not had any contact with Weinberg from September 12, 2012, a month before Kercher filed his complaint in district court, to May 20, 2013, when Weinberg attended a hearing. Wiltse also stated that "Zalewski attended all case proceedings by himself before that and signed all papers in the case in his or his firm's name only."

The district court noted that the calculation of Weinberg's attorney fees was "more difficult to ascertain." The district court found that "[n]othing in . . . Zalewski's affidavit implies that, but for the assistance of . . . Weinberg, he would not have been able to adequately represent . . . Kercher." As such, the district court awarded attorney fees for the work Weinberg did before Kercher retained Zalewski and for the time Weinberg spent attending the hearing for the motion for summary judgment, for a total amount of $3,943.74.

The University appeals the judgment against it for breach of contract. Kercher cross-appeals the district court's award of Weinberg's attorney fees.

## ASSIGNMENTS OF ERROR

### The University's Assignment of Error

The University assigns, on appeal, restated and consolidated, that the district court erred in concluding that the $24,000 stipend was a continuous appointment and not a special appointment.

### Kercher's Assignments of Error

Kercher assigns on cross-appeal, consolidated and restated, that the district court erred in failing to (1) recognize the contribution of Weinberg and concluding that Kercher was not entitled to all attorney fees expended in representation by Weinberg and (2) consider evidence presented by Weinberg in support of his motion for an award of attorney fees.

## STANDARD OF REVIEW

[1,2] Summary judgment is proper if the pleadings and admissible evidence offered show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[1] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment

---

[1] *Roos v. KFS BD, Inc.*, 280 Neb. 930, 799 N.W.2d 43 (2010).

was granted, and gives the party the benefit of all reasonable inferences deducible from the evidence.[2]

[3] The meaning of a contract is a question of law, in connection with which an appellate court has an obligation to reach its conclusions independently of the determinations made by the court below.[3]

[4] An appellate court reviews a court's award of attorney fees under § 48-1231 for abuse of discretion.[4]

## ANALYSIS

### Breach of Contract Claim

[5] The University assigns that the district court erred in determining that Kercher's stipend amount did not constitute a special appointment. In an action for breach of an employment contract, the burden of proving the existence of a contract and all the facts essential to the cause of action is upon the person who asserts the contract.[5] Thus, Kercher bears the burden of proving the terms of the contract and that the University breached those terms.

[6,7] When the terms of a contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them.[6] A contract must receive a reasonable construction and must be construed as a whole, and if possible, effect must be given to every part of the contract.[7] Therefore, our analysis is constrained to an interpretation of the terms of the agreement between the University and Kercher, which includes the offer given to Kercher along with the Bylaws incorporated into the agreement.

---

[2] *Green v. Box Butte General Hosp.*, 284 Neb. 243, 818 N.W.2d 589 (2012).

[3] *Braunger Foods v. Sears*, 286 Neb. 29, 834 N.W.2d 779 (2013).

[4] *Fisher v. PayFlex Systems USA*, 285 Neb. 808, 829 N.W.2d 703 (2013).

[5] *Blinn v. Beatrice Community Hosp. & Health Ctr.*, 270 Neb. 809, 708 N.W.2d 235 (2006).

[6] *Coffey v. Planet Group*, 287 Neb. 834, 845 N.W.2d 255 (2014).

[7] *E & E Prop. Holdings v. Universal Cos.*, 18 Neb. App. 532, 788 N.W.2d 571 (2010).

Ultimately, the issue in this case is whether the endowed portion of Kercher's salary was a continuous or special appointment under the Bylaws. If it was a special appointment, then the University was within its rights under the Bylaws to terminate it with 90 days' notice. However, if it was a continuous appointment, then, under the Bylaws, it can be terminated only for cause and the University breached its agreement with Kercher.

The Bylaws provide the framework for construing the agreement between the parties. Of particular importance is section 4.3(a) and (b). Section 4.3(a) requires that "[e]very appointment . . . shall be in writing." (Emphasis supplied.) Taking into account the entirety of the Bylaws, this would mean that in the case of concurrent appointments, like what the University claims existed in this case, both appointments would need to be made in writing. Nowhere in the written offer to Kercher does it make any reference to the term "special appointment" or clearly indicate that any part of his salary was not subject to a continuous appointment.

Even if we were to somehow read into the agreement that it provided for a special appointment, the offer also failed to satisfy section 4.3(b), which requires the University to provide a written statement of the faculty member's duties. In the agreement, there was no mention of any specific duties, beyond Thorson's statement attached to the offer. It was certainly not made clear in the written offer that Kercher's endowed stipend was contingent upon his performing certain community outreach duties.

Moreover, there is no evidence that the terms of any special appointment were even communicated to Kercher orally before he accepted the position. Masters acknowledged in an e-mail that "[a]s we all know, the terms [of the agreement] were not revealed to [Kercher] when he first came to [the University]." All members of the hiring committee also indicated in interrogatories that they never informed Kercher before he was hired that he must meet the requirements of any specific endowment or that any portion of his salary would be subject to review or renewal.

The University argues that including the information that a portion of the salary was to be paid by an unnamed endowment from the Foundation was sufficient to create a special appointment, because pursuant to section 4.4.1(9) of the Bylaws, "appointments supported by funds over which the University does not have control" can be filled only as special appointments. This argument by the University, however, overlooks the fact that the Bylaws still require that all appointments be made in writing and that the faculty member, when initially assigned to an appointment, be provided with a statement outlining the responsibilities for the appointment. Kercher was never provided that information. Taking into account the Bylaws, a reasonable person would conclude that the offer presented to Kercher by the University was for a tenured position with a salary of $100,000. The district court did not err in granting Kercher's motion for partial summary judgment.

## Attorney Fees

Kercher assigns on cross-appeal that the district court abused its discretion in not awarding him all of the fees requested by Weinberg. Section 48-1231(1) provides, in part, "If an employee establishes a claim and secures judgment on the claim, such employee shall be entitled to recover . . . an amount for attorney's fees assessed by the court, which fees shall not be less than twenty-five percent of the unpaid wages."

[8,9] An appellate court reviews a court's award of attorney fees under § 48-1231 for abuse of discretion.[8] A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[9] To determine proper and reasonable attorney fees, a court must consider several factors: the nature of the litigation, the time and labor required, the novelty and difficulty of the questions raised, the skill required to properly

---

[8] *Fisher v. PayFlex Systems USA, supra* note 4.

[9] *Id.*

conduct the case, the responsibility assumed, the care and diligence exhibited, the result of the suit, the character and standing of the attorney, and the customary charges of the bar for similar services.[10]

The record indicates that Zalewski was the lead attorney throughout the duration of the litigation, and there is little evidence in the record reflecting what Weinberg contributed to the case. Zalewski is an experienced, skillful attorney and returned a favorable result for his client. The district court recognized that and awarded fees consistent with what Zalewski had billed Kercher. The only evidence the district court had of Weinberg's contribution to the case was his affidavit and his appearance at one hearing during the course of litigation. Weinberg did not sign any briefs or other documents submitted to the court or attend any depositions, and he did not communicate with opposing counsel from September 12, 2012, to May 20, 2013. It was on this basis that the district court reduced the award of Weinberg's attorney fees.

The parties in this case stipulated that the statutory minimum amount to be awarded for attorney fees would be $7,938 (25 percent of $31,752). The district court awarded a total of $32,638 ($28,694.26 plus $3,943.74) for fees between the two attorneys. That is over four times the statutory minimum and more than what Kercher received in lost wages. The district court did not abuse its discretion in its award of attorney fees for Weinberg's limited work on the case.

Although not raised by the parties, Kercher is also entitled to an award of attorney fees for this action. Section 48-1231(1) provides in relevant part:

> If the cause is taken to an appellate court and the plaintiff recovers a judgment, the appellate court shall tax as costs in the action, to be paid to the plaintiff, an additional amount for attorney's fees in such appellate court, which fees shall not be less than twenty-five percent of the unpaid wages.

When an employer appeals a judgment in favor of the employee and the employee then also prevails on appeal, the

---

[10] *Id.*

statute requires that the appellate court award attorney fees of at least 25 percent of the unpaid wages in addition to the fees awarded by the trial court.[11] In several past cases, we have awarded attorney fees at both the trial and appellate levels.[12] Accordingly, Kercher's attorney fees in the appellate court in the sum of $7,938, which is the statutory minimum 25 percent of the unpaid wages as previously stipulated by the parties, are assessed against the University. We remand the cause back to the district court to determine how the fees for their work on appeal should be split between Zalewski and Weinberg.

## CONCLUSION

Accordingly, we find that the district court properly granted Kercher's motion for partial summary judgment and that the district court did not abuse its discretion in its award of attorney fees for Kercher. We further award, pursuant to § 48-1231(1), an additional $7,938 to Kercher in attorney fees in this appeal.

AFFIRMED AND REMANDED FOR
FURTHER PROCEEDINGS.

HEAVICAN, C.J., and WRIGHT, J., not participating.

---

[11] See, *Professional Firefighters Assn. v. City of Omaha*, ante p. 300, ___ N.W.2d ___ (2015); *Sindelar v. Canada Transport, Inc.*, 246 Neb. 559, 520 N.W.2d 203 (1994).

[12] See, e.g., *Rauscher v. City of Lincoln*, 269 Neb. 267, 691 N.W.2d 844 (2005); *Moore v. Eggers Consulting Co.*, 252 Neb. 396, 562 N.W.2d 534 (1997) (superseded by statute as stated in *Coffey v. Planet Group, supra* note 6); *Sindelar v. Canada Transport, Inc., supra* note 11.