IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


EDMUNDS V. STEVENS


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


PATRICK EDMUNDS, APPELLEE,

V.

CAROL STEVENS, APPELLANT.


Filed April 4, 2017.    No. A-16-129.


Appeal from the District Court for Cedar County, PAUL J. VAUGHAN, Judge, on appeal thereto from the County Court for Cedar County, DOUGLAS L. LUEBE, Judge. Judgment of District Court affirmed.

David W. Watermeier and McKynze Works, Senior Certified Law Student, of Morrow, Poppe, Watermeier & Lonowski, P.C., L.L.O., for appellant.

Julie Fowler and Brendan M. Kelly, of Fowler & Kelly Law, L.L.P., for appellee.


MOORE, Chief Judge, and INBODY and RIEDMANN, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Carol Stevens appeals from the district court's order affirming the decision of the County Court of Cedar County, Nebraska, awarding damages to Patrick Edmunds. We find no merit to the arguments raised on appeal and affirm.

## BACKGROUND

Edmunds purchased a female German Shepherd puppy named Bree VIII (Bree) from Stevens pursuant to a sales agreement dated March 19, 2013. Stevens maintained a website on which she advertised the dogs she had for sale. Her website stated that "[i]nvesting in high quality

genetics pays you back many times over. Investing in low quality genetics costs you many times over." The website also referenced attendance at Canine Breeder Excellence Seminars conducted by UC Davis, which had a reputation of providing "cutting edge information." Edmunds testified that he had purchased Bree as an investment based on Stevens' advertisements promising a high-quality dog and that his intent was to breed and show her.

The sales agreement between Edmunds and Stevens contained a provision providing a warranty for Bree's elbows and hips until she was one year old. This provision was to expire on December 30, 2013. Under this provision, a certified orthopedic veterinarian must provide a written diagnosis as well as x-rays clearly identifying crippling dysplasia. The agreement also required Edmunds to have radiographs taken of Bree and submitted to the Orthopedic Foundation for Animals ("OFA") to be rated.

Edmunds had two radiographs taken around the time that Bree turned two and submitted them to the OFA. As a result of the radiographs, Bree was diagnosed with an ununited anconeal process of the left elbow, also known as UAP or elbow dysplasia. This occurs when a small bone in a dog's elbow, the anconeal process, does not fuse with the ulna. UAP can cause instability in a dog's elbow joint and can lead to arthritis and degenerative joint disease. A diagnosis of UAP can lead to lameness. UAP has a genetic component and the breeding of affected animals is not recommended.

Edmunds filed a claim against Stevens in small claims court in Cedar County, seeking damages and reimbursement for the veterinarian fees and expenses generated in diagnosing Bree with UAP. The county court held trial, at which both parties testified and submitted a number of exhibits. The county court found that the provision in the sales agreement provided for a lesser amount of time in which the purchaser could discover serious health problems than is statutorily required by Neb. Rev. Stat. § 54-647(1) (Reissue 2010), thereby rendering such provision void. The court ruled in favor of Edmunds, awarding him $2,665.00 in damages and assessing court costs to Stevens.

Stevens subsequently filed a notice of appeal with the district court. The district court affirmed the county court's judgment in favor of Edmunds. Stevens now appeals to this court.

ASSIGNMENTS OF ERROR

Stevens assigns, restated, that the county court erred in (1) concluding that Bree's condition was genetic, and (2) not considering all relevant evidence in determining whether the one year warranty allowed sufficient time to discover the defects which it covered.

STANDARD OF REVIEW

The district court and higher appellate courts generally review judgments from a small claims court for error appearing on the record. *Hara v. Reichert*, 287 Neb. 577, 843 N.W.2d 812 (2014); *Flodman v. Robinson*, 22 Neb. App. 943, 864 N.W.2d 716 (2015).

When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, nor unreasonable. *First Nat. Bank of Unadilla v. Betts*, 275 Neb. 665, 748 N.W.2d 76 (2008). However, questions of law are nonetheless reviewed de novo on the record. *Id.*

- 2 -

ANALYSIS

*Genetic Condition.*

Stevens first argues that the evidence presented to the county court did not prove that Bree's condition was genetic. She claims that Edmunds' admission that he did not have a DNA test performed along with evidence suggesting environmental causes proved that the cause was not genetic. We disagree.

Edmunds presented the court with a letter from Bree's veterinarian diagnosing her with UAP. This letter stated that the diagnosis was based upon the veterinarian's experience as well as her own evaluation and that of the OFA. The veterinarian specifically identified the UAP as "a genetic disorder affecting the union of the anconeal process to the proximal end of the ulna." She went on to state that "[b]reeding of affected animals is not recommended due to the genetic component of the problem." Edmunds testified that the veterinarian told him that she had concluded that Bree's condition had been caused by genetics. Edmunds also presented the court with reports from the OFA finding that both radiographs showed that Bree displayed UAP in her left elbow. Edmunds testified that he did not have a DNA test performed to confirm that the condition was genetic because he relied on the veterinarian's experience with this condition in forming the opinion that it was specifically caused by genetics.

Stevens testified that other environmental factors, such as diet, could have caused UAP. Specifically, she claimed that Edmunds did not follow the recommendation in the sales agreement as to the type of food to use, and a lower-quality food "could as well have contributed to this condition." She further testified that Bree "could have sustained trauma" in a training program in which Edmunds had her enrolled. Finally, Stevens offered into evidence a printout of information obtained from "VCA Hospitals" which contains the following statements:

> [UAP] does appear to be hereditary in certain breeds, mostly large breeds . . . . German Shepherds seem to be particularly affected by the problem, although it does occur in other breeds, and males are more commonly affected. There may be dietary factors involved in the development of this condition since there is a correlation between diets that contain too much energy and calcium and the development of elbow dysplasia.

Other than Edmunds' admission that he enrolled Bree in a training program, there was no evidence of Bree's activity or the amount of calcium contained in her diet.

While the parties presented opposing evidence and testimony on the issue of causation, the county court ultimately found Edmunds' evidence to be more credible and thus found that the condition was genetic. An appellate court does not reweigh the evidence, but considers the judgment in the light most favorable to the successful party and resolves evidentiary conflicts in favor of that party. *Henrikson v. Gleason*, 263 Neb. 840, 643 N.W.2d 652 (2002). Based on the record before us, we conclude that the county court's finding of genetic causation is supported by the evidence.

*Failure to Consider All Relevant Evidence*
*Regarding Sufficiency of 1-Year Warranty.*

Stevens next argues that even if Bree's condition was genetic, Edmunds could have discovered it during the 1-year warranty period pursuant to the sales agreement. She claims that even though the OFA will not grade a dog's hips or elbows prior to two years' of age, it will indicate any issues that are evident. Furthermore, Stevens claims that the sales agreement did not require the OFA to diagnose a condition; rather, it simply required that Edmunds submit radiographs to the OFA to be rated. Stevens asserts the evidence is clear that the growth plate between the anconeal process and the ulna should be fused by five months' age, at which point it can be detected. She claims that Edmunds could have obtained radiographs and a diagnosis from a certified orthopedic vet any time after the age of five months but prior to the expiration of the warranty.

The county court determined that the one year warranty clause was unenforceable under the Dog and Cat Purchase Protection Act, Neb. Rev. Stat. § 54-644 et. seq. (Reissue 2010).

Neb. Rev. Stat. § 54-650 (Reissue 2010) states:

> Nothing in the Dog and Cat Purchase Protection Act shall limit any rights and remedies otherwise available under the laws of this state. *Any agreement or contract entered into by a seller and a purchaser waiving any rights under the act is void.* Nothing in the Dog and Cat Purchase Protection Act shall be construed to limit a seller to offering only those warranties, express or implied, required by the act.

(Emphasis added.)

Neb. Rev. Stat. § 54-647 (Reissue 2010) provides for certain remedies under the Act if within 15 months after the pet's birth a veterinarian diagnoses it with a serious health problem that the veterinarian believes existed at the time the owner took possession of the pet. Because the sales agreement between Edmunds and Stevens precluded any remedy after one year, the court determined the contract was in violation of § 54-644 and therefore void. Stevens does not appeal that decision; rather, she argues that because Edmunds could have discovered Bree's condition within the one year warranty period, the length of the warranty was sufficient. We disagree.

Having determined that the sales agreement was void, the county court proceeded to analyze the contract under the Nebraska Uniform Commercial Code (Neb. U.C.C.). It determined that the sale of Bree constituted a sale of goods governed by the U.C.C. and that the U.C.C. requires the parties to operate in good faith in transactions such as the present one. See Neb. U.C.C. § 2-207 (Reissue 2001). It concluded that Stevens "restricted the warranty to a time less than the accepted age of 24 months after which such genetic defects that the warranty was to cover, could be discovered." Therefore, the court determined that Stevens did not act in good faith and that Edmunds was entitled to judgment in his favor.

We agree with the county court that the sales agreement is void because it attempts to restrict Edmund's ability to recover after one year instead of the statutory 15 months. Because § 54-650 preserves a buyer's rights and remedies otherwise available under the laws of this state, it was proper for the court to analyze Edmund's remedies under the U.C.C. Pursuant to the U.C.C., Bree falls within the definition of goods and a sale of such goods operates as a contract for sale.

See U.C.C. §§ 2-105(1) (Reissue 2001) and 2-106 (Reissue 2001). The issue then becomes whether Stevens acted in good faith when limiting the recovery time period to 15 months. The county court found that she did not because the evidence supported a determination that the accepted practice in the industry was that discovery of UAP did not occur until the dog reached the age of 24 months.

Stevens takes issue with the court's factual finding that the UAP could not be discovered within one year. But the county court was presented with conflicting evidence regarding when the condition could be discovered. A letter from Bree's veterinarian stated that UAP is diagnosed when the anconeal process and the ulna do not knit together by the age of two years. Similarly, the instructions for taking images for an OFA dysplasia evaluation stated that only animals who are two years of age or older at the time of radiography and whose radiographs show no signs of dysplasia will be assigned an OFA number. On the other hand, Stevens presented the court with an Internet printout from the "VCA Animal Hospitals" that stated the growth plate between the anconeal process and the ulna typically fuses by five months of age. The county court resolved the issue in favor of Edmunds determining that the UAP cannot be diagnosed before two years of age. Given our standard of review, we will not reweigh the evidence. See *Henrikson v. Gleason*, 263 Neb. 840, 643 N.W.2d 652 (2002). Because there is sufficient competent evidence in the record to support the county court's finding, we affirm its decision.

We also note that while the explicit wording of the warranty in the sales agreement does not state that the OFA must diagnose a condition, it does require radiographs to be submitted for the purpose of being rated. The county court found that only animals two years of age or older at the time radiographs are taken and with no radiographic evidence of dysplasia will be given an OFA number pursuant to an evaluation. We find that it was reasonable for the county court to infer that the purpose of submitting radiographs to the OFA to be rated is to be assigned an OFA number, and that this cannot take place prior to two years of age. Accordingly, we find no merit to Stevens' argument.

CONCLUSION

We conclude that there was sufficient relevant evidence to support the district court's decision to affirm the county court's judgment. We therefore affirm.

AFFIRMED.